**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HENRY ARGUDO and DIEGO SANAY, on behalf of themselves and others similarly situated,

        Plaintiffs,

      v.                                                       Index No.: 18-cv-678 (JMF)

**PAREA GROUP LLC, d/b/a TRATTORIA IL MULINO, IMNY GS LLC d/b/a IL MULINO TRIBECA, GFB RESTAURANT CORP. d/b/a IL MULINO DOWNTOWN, WONDERFUL RESTAURANT LLC d/b/a IL MULINO UPTOWN, BRIAN GALLIGAN, and GERALD KATZOFF,**

        Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PAREA GROUP LLC d/b/a TRATTORIA IL MULINO'S MOTION TO DISMISS**

JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum, Esq.
Josef Nussbaum, Esq.
Lucas C. Buzzard, Esq.
32 Broadway, Suite 601
New York, New York 10004
(212) 688-5640

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ..................................................................................................ii

I. **PRELIMINARY STATEMENT** .............................................................................1

II. **COUNTERSTATEMENT OF FACTS** ..................................................................1

III. **ARGUMENT** ...........................................................................................................4

    A. Standard of Review .............................................................................................4

    B. Joint Employer Standard. ....................................................................................5

    C. The Allegations in the Amended Complaint Sufficiently Allege that Parea is a Joint Employer of Plaintiffs ................................................................8

        1. *Carter Factors* ..............................................................................................8

        2. *Functional Control Factors* ......................................................................11

IV. **CONCLUSION** .....................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**

*Ansoumana v. Gristede's Operating Corp.*,
 255 F. Supp. 2d 184 (S.D.N.Y. 2003)..................................................................11

*Barfield v. New York City Health & Hosps. Corp.*,
 537 F.3d 132 (2d Cir. 2008)............................................................................*passim*

*Benitez v. Demco of Riverdale, LLC*, No. 14-cv-7074 (CM),
 2015 U.S. Dist. LEXIS 20325 (S.D.N.Y. Feb. 19, 2015)..................................7

*Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-cv-5735 (GHW),
 2017 U.S. Dist. LEXIS 92149 (S.D.N.Y. June 15, 2017)..................................7

*Chen v. Domino's Pizza, Inc.*, No. 09-107 (JAP),
 2009 U.S. Dist. LEXIS 96362 (D. N.J. Oct. 16, 2009)........................................14

*Cordova v. SCCF, Inc.*, No. 13-cv-5665,
 2014 U.S. Dist. LEXIS 97388 (S.D.N.Y. July 16, 2014) ...................................13

*Dixon v. Zabka*, No. 11-cv-982 (MPS),
 2014 U.S. Dist. LEXIS 159692 (D. Conn. Nov. 13, 2014) ................................11, 12

*Downev v. Adloox Inc.*,
 238 F. Supp. 3d. 514 (S.D.N.Y. 2017)................................................................7, 14

*Hart v. Rick's Cabaret Int'l Inc.*,
 967 F. Supp. 2d 901 (S.D.N.Y. 2013)................................................................12

*Herman v. RSR Sec. Servs. Ltd.*,
 172 F.3d 132 (2d Cir. 1999)................................................................................5, 10

*Lin v. Great Rose Fashion, Inc.*, No. 08-cv-4778,
 2009 U.S. Dist. LEXIS 46726 (E.D.N.Y. June 3, 2009) ....................................10

*Murphy v. HeartShare Human Servs. of N.Y.*,
 254 F. Supp. 3d 392 (E.D.N.Y. 2017) ..............................................................5

*Ocampo v. 455 Hosp. LLC*, No. 14-cv-9614 (KMK),
 2016 U.S. Dist. LEXIS 125928 (S.D.N.Y. Sept. 15, 2016)................................6, 9, 10

*Olvera v. Bareburger Grp. LLC*,
 73 F. Supp. 3d 201 (S.D.N.Y. 2014)...................................................................*passim*

*United States ex rel. Wood v. Allergan, Inc.*,
 246 F. Supp. 3d 772 (S.D.N.Y. 2017) ................................................................4

*Zheng v. Liberty Apparel Co.*,
 355 F.3d 61 (2d Cir. 2003) .......................................................................*passim*

**Statutes, Rules, and Regulations**

29 U.S.C. § 203 ...........................................................................................................5

29 C.F.R. § 791.2 ..................................................................................................5, 14

Fed. R. Civ. P. 12(b)(6) ..............................................................................................4

**I.  PRELIMINARY STATEMENT**

The motion to dismiss filed by Defendant Parea Group LLC d/b/a Trattoria Il Mulino ("Parea") must be denied.  Parea's argument that the Amended Complaint does not allege facts sufficient to plausibly allege that it is a joint employer of Plaintiffs who worked for years as servers in the restaurant it owned, is quite preposterous.  The Amended Complaint specifically alleges that Parea retained ultimate authority over the employees and payroll practices at its restaurant, established operating standards governing the management of that restaurant, owned the restaurant's payroll records, issued paychecks to restaurant employees at times, and had authority to approve the restaurant's annual operating budget.  Such facts, which are fully supported and amplified by the Management Agreement submitted and relied on by Parea in its motion to dismiss, are more than sufficient to plausibly allege that Parea was Plaintiffs' joint employer under the Second Circuit's multifactor, fact-intensive "economic realities" test.  Parea's motion to dismiss should be denied.

**II.  COUNTERSTATEMENT OF FACTS**

Plaintiffs Henry Argudo and Diego Sanay worked as servers in the Trattoria Il Mulino restaurant located at 36th East 20th Street in Manhattan (the "Restaurant").  Manduke Decl., Ex. A (Am. Compl.) ¶¶ 4, 29-30.  Plaintiff Sanay worked at the Restaurant for four years, while Plaintiff Argudo worked there for a year and a half.  *Id.* ¶¶ 29-30.  Plaintiffs allege numerous violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by their employers at the Restaurant, including that they were regularly not paid earned overtime wages, were improperly paid at a "tip credit" rate below the minimum wage without receiving the proper notice, and were illegally forced to share their tips with employees who did not provide direct customer service.  *Id.* ¶¶ 44-55.

Plaintiffs allege that they were jointly employed at the Restaurant by two entities relevant here—Defendant Parea Group LLC d/b/a Trattoria Il Mulino ("Parea") and K.G. IM Management, LLC ("KGIM"). *Id.* ¶¶ 4, 19, 20-28. Parea owed the Restaurant at all relevant times. *Id.* ¶ 4. In May 2013, Parea entered into a Management Agreement ("Agreement") with KGIM. *Id.* ¶ 19; *see also* Manduke Decl., Ex. B (Management Agreement). Following the entry into this Agreement, Parea retained ultimate authority over both the operations and the finances of the Restaurant, including the Restaurant's employees and payroll practices. Am. Compl. ¶¶ 20, 28.

With respect to operations, under the Agreement, KGIM is required to manage the Restaurant "on behalf of" Parea in accordance with certain "Operating Standards" promulgated by Parea. Am. Comp. ¶ 21; Agreement ¶ 3.1. These Operating Standards are detailed in "operations manuals," and relate to "the operation of the Restaurant, including . . . operating procedures, . . . management, . . . [and] training and accounting programs." Agreement at pp. 2. KGIM is required to furnish Parea with monthly reports detailing the "operation of the Restaurant," including "all receipts and disbursements relating to the Restaurant." *Id.* ¶ 5.5. "All books and records" used to prepare these reports are the property of Parea, which Parea may access "at all reasonable times." *Id.* KGIM is prohibited from selling or disposing "any portion of the Restaurant," Agreement ¶ 3.2(c), and all relevant licenses and permits, including the Restaurant's liquor license, are held in Parea's name, not that of KGIM. Am. Compl. ¶ 22; Agreement ¶ 3.1(f).

With respect to finances, KGIM must manage the Restaurant in accordance with an "Approved Annual Operating Budget," Agreement ¶ 3.1, with the goal of "optimizing the aggregate amount of cash flow generated by the Restaurant," *id.* ¶ 3.1(g). To this end, KGIM is required to submit a proposed annual operating budget to Parea for its approval. *Id.* ¶ 5.1. Parea retains the right to request changes to the proposed annual budget, and KGIM must "promptly

modify" the proposed budget to reflect Parea's requested changes it finds acceptable. *Id.* Once approved by Parea, the proposed annual operating budget becomes the Approved Annual Operating Budget under which KGIM must operate. *Id.* Any amendments made by KGIM to the Approved Annual Budget must also be submitted to Parea for its approval. *Id.* KGIM must furnish Parea with monthly financial statements, *id.* 5.5(a), and Parea has the right to audit all "books and records relating to the Restaurant" twice each year, *id.* ¶ 5.7.

KGIM is responsible for ensuring that all "operating expenses" of the Restaurant are paid, "[s]ubject to the limitations of the Approved Annual Operating Budget." *Id.* ¶ 5.2. These operating expenses are to be paid from two operating accounts maintained by KGIM "on [Parea's] behalf" at a bank approved by Parea. *Id.* ¶ 5.3. Parea is a co-signatory on both accounts, and the Agreement required it to provide KGIM with sufficient funds to "pay the first month's operating expenses of the Restaurant." *Id.* All funds received from operation of the Restaurant are to be deposited into one of these operating accounts. *Id.* To the extent the Restaurant's receipts are "insufficient to pay the operating expenses of the Restaurant," Parea is required to provide funds "reasonably requested" by KGIM by depositing them into one of the operating accounts within two business days of the request. *Id.* Under no circumstances will KGIM itself be "required to pay any expenses of the Restaurant with its own funds," *id.*, and the Agreement requires Parea to establish a "working capital account" used as a "cash reserve" to fund the Restaurant's operating expenses if necessary, *id.* ¶ 5.4.

Parea's ultimate control over the Restaurant's finances and operations necessarily encompasses ultimate control over the Restaurant's employees. Am. Compl. ¶ 28. The Agreement specifies that KGIM shall, "on [Parea's] behalf," hire train, supervise, and pay Restaurant employees, and that the associated costs are an "operating expense" of the Restaurant. Agreement

¶ 6. Parea, not KGIM, bears the cost of causing all employees to be covered by workers' compensation insurance and other insurance required by law. *Id.* Although KGIM is required to "maintain all personnel and payroll records," *id.*, those records belong to Parea and must be returned to Parea upon the termination of the Agreement, *id.* ¶¶ 5.5, 12(c). The "Human Resources" section of the Agreement provides that customer complaints "of a serious nature will be reported to [Parea] with appropriate recommendations from [KGIM]." *Id.* ¶ 6. Further, at certain periods of time covered by this lawsuit, Parea, not KGIM, issued paychecks directly to Il Mulino employees. Am. Compl. ¶ 27.

For its services, KGIM is paid a "management fee" consisting of 5% of the Restaurant's gross revenues. Agreement ¶ 4. Upon the termination of the Agreement, KGIM is required to provide Parea with any assistance it reasonably requests in order to "facilitate an orderly transition of the management of the Restaurant." *Id.* ¶ 12(c)(v). KGIM may not delegate any of its responsibilities to another entity without Parea's consent. *Id.* ¶ 13.

## III.   ARGUMENT

### A.   Standard of Review

In reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "the Court must accept all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 787 (S.D.N.Y. 2017) (Furman, *J.*) (internal quotation marks and alterations omitted). To survive a motion to dismiss, the plaintiff need only allege "sufficient facts to state a claim to relief that is facially plausible, that is, one that contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations and quotation marks omitted).

### B. Joint Employer Standard

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An entity "employs" an individual under the FLSA if it "suffers or permits" that individual to work. 29 U.S.C. § 203(g). "This is the broadest definition of employ that has ever been included in any one act," *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 69 (2d Cir. 2003) (alterations and quotation marks omitted), and "[t]he regulations promulgated under the FLSA expressly recognize that a worker may be employed by more than one entity at the same time," *id.* at 66 (citing 29 C.F.R. § 791.2); *see* 29 C.F.R. § 791.2 (b)(2) (explaining that "a joint employment relationship generally will be considered to exist in situations such as . . . [w]here one employer is acting directly or indirectly in the interest of the other employer . . . in relation to the employee"). Indeed, "[a]n individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which case 'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the statute.'" *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 204-05 (S.D.N.Y. 2014) (quoting 29 C.F.R. § 791.2(a)) (brackets omitted).

"[W]hether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quotation marks omitted). "[E]conomic reality is determined based upon all the circumstances, [and] any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *see also Zheng*, 355 F.3d at 71. Courts have held that "vertical" joint employment "exists 'when an employee of one employer (referred to as an intermediary employer) is also, with regard to the work performed for the intermediary employer, economically dependent on another employer.'" *Murphy v. HeartShare Human Servs. of N.Y.*,

5

254 F. Supp. 3d 392, 396 (E.D.N.Y. 2017) (quoting Opinion Letter from U.S. Dep't of Labor, Wage & Hour Div., 2016 DOLWH LEXIS 1, 2016 WL 284582, at *4 (Jan. 20, 2016)).

The Second Circuit has outlined a number of "nonexclusive and overlapping" factors that may be considered by courts "to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FSLA." *Barfield*, 537 F.3d at 143.  The first set of factors, often referred to as the *Carter* factors, examine the putative employer's "formal control" and look to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Ocampo v. 455 Hosp. LLC*, No. 14-cv-9614 (KMK), 2016 U.S. Dist. LEXIS 125928, at *17-18 (S.D.N.Y. Sept. 15, 2016) (internal quotation marks omitted).

While satisfaction of the *Carter* factors is "sufficient to establish employment status," the Second Circuit has "never held that a positive finding on those four factors is necessary to establish an employment relationship." *Barfield*, 537 F.3d at 143 (quotation marks and alterations omitted). The Second Circuit has expressly held that an entity may be held liable as an employer even where it "lacked formal control over workers." *Id.* (citing *Zheng*, 355 F.3d at 61).  In such situations, the Second Circuit looks to the entity's "functional control" over the workers by assessing the following relevant factors:

> (1) whether the alleged employers' premises and equipment were used for the plaintiffs' work; (2) whether the subcontractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which [the] plaintiffs performed a discrete line job that was integral to the alleged employers' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged employers or their agents supervised [the] plaintiffs' work; and (6) whether [the] plaintiffs worked exclusively or predominantly for the alleged employers.

*Olvera*, 73 F. Supp. 3d at 205-06 (alterations omitted) (quoting *Zheng*, 355 F.3d at 71-72).[1]

As may be seen from the above, the multifactor joint-employer inquiry is highly fact-intensive. As such, the question of whether an entity may be considered a joint employer under the FLSA is generally not suitable for resolution on a motion to dismiss. *See Zheng*, 355 F.3d at 76 n. 13 ("The fact-intensive character of the joint employment inquiry is highlighted by the fact that two of the three leading cases in this circuit were appeals from judgments following bench trials."); *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-cv-5735 (GHW), 2017 U.S. Dist. LEXIS 92149, at *20 (S.D.N.Y. June 15, 2017) (denying motion to dismiss FLSA defendants under a "joint employer" theory given the "fact-intensive nature of the joint-employer inquiry"); *Benitez v. Demco of Riverdale, LLC*, No. 14-cv-7074 (CM), 2015 U.S. Dist. LEXIS 20325, at *4 (S.D.N.Y. Feb. 19, 2015) (holding that the question of "[w]hether a franchisor . . . is a joint employer with its franchisee as to the employees who work in the franchisee's restaurants presents a question of fact that cannot be resolved on a pre-answer motion to dismiss"); *cf. Downev v. Adloox Inc.*, 238 F. Supp. 3d. 514, 523 (S.D.N.Y. 2017) (Furman, *J.*) (question in ADEA case of whether defendants were "sufficiently integrated to be treated as a single employer is generally a question of fact not suitable for resolution on a motion to dismiss" (quotation marks omitted)). Indeed, the Second Circuit has noted that joint-employment is rarely susceptible to resolution *even at the summary judgment stage*. *See Barfield*, 537 F.3d at 143-44. Thus, to survive a motion to dismiss on employer status, "a plaintiff need only allege facts sufficient to put the defendant on notice of the theory of employer liability upon which her claims are based." *Downey*, 238 F. Supp. 3d at 523 (internal quotation marks omitted).

---

[1] As Parea points out in its memorandum of law, courts in this Circuit have consistently applied the same test to determine whether an entity is a joint employer under the NYLL. *See* Parea Mem. at 16-17; *see also Olvera*, 73 F. Supp. 3d at 206 ("Courts in this District have regularly applied the same tests to determine, under the FLSA and NYLL, whether entities were joint employers.").

7

### C. The Allegations in the Amended Complaint Sufficiently Allege that Parea is a Joint Employer of Plaintiffs

Here, the facts alleged in the Amended Complaint are more than sufficient to put Parea on notice that Plaintiff's claims are based on the Second Circuit's joint employer theory of liability outlined in in *Zheng* and its progeny.

#### 1. Carter Factors

With respect to the *Carter* "formal control" factors, the Amended Complaint alleges that "[a]s a result of the strict requirements of the . . . Agreement between Parea and KGIM, Parea has clear ultimate authority over the hiring and firing of employees, staffing and payroll practices at [the Restaurant]." Am. Comp. ¶ 28. This allegation is confirmed by the text of the Agreement. First, with respect to the power to hire and fire employees, the Agreement specifies that all employees are to be hired "on . . . behalf" of Parea and, in the event that the Agreement terminates, KGIM will forward all employee records to Parea and assist it with the "orderly transition of the management of the Restaurant." Agreement ¶¶ 6, 12(c). Thus, the Agreement specifically contemplates that it is Parea which will have ultimate responsibility for the employees hired "on [its] behalf." Moreover, the "Human Resources" section of the Agreement specifies that KGIM is required to report customer complaints of a "serious nature" to KGIM along with its "recommendations." Agreement ¶ 6. Drawing all inferences in Plaintiffs' favor, this suggests that Parea necessarily has ultimate decision-making authority with respect to "Human Resources" matters, including the discipline and termination of employees for "serious" infractions.

Next, Parea's authority to set the "conditions of employment" is encapsulated by the Agreement's requirement that KGIM abide by the Operating Standards promulgated by Parea. While Parea claims that these Operating Standards govern only such items as "fixtures, equipment, décor, and marketing," Parea Mem. at 13, this assertion is belied by the text of the Agreement,

8

which specifically states that the Operating Standards also govern the Restaurant's "operating procedures," "management," and "training."[2] Agreement pp. 2.  Courts have found the ability to promulgate such operating policies highly relevant to the joint-employer analysis, and have frequently denied motions to dismiss where a putative employer retained such authority.  *See, e.g.*, *Olvera*, 73 F. Supp. 3d at 207 (motion to dismiss denied where putative joint employer "guided franchisees on how to . . . train employees" and "set and enforced requirements for the operation of franchisees"); *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 260 (S.D.N.Y. 2012) (denying motion to dismiss where, *inter alia*, the putative joint employer "created management and operation policies and practices that were implemented at the defendants' store by providing materials used in training store managers and employees").

Turning to the third *Carter* factor, the Amended Complaint specifically alleges that there were times when Parea, not KGIM, issued paychecks directly to the Restaurant's employees, Am. Compl. ¶ 27, thus demonstrating its independent ability to "determine[] the rate and method of payment."  This conclusion is supported by the text of the Agreement, which specifies that the payment of Restaurant employees is an "operating expense" that is "[s]ubject to the limitations imposed by the Approved Annual Operating Budget" that Parea must approve.  Agreement ¶ 5.2.  Moreover, because employee pay is characterized in the Agreement as an "operating expense," Parea, not KGIM, is ultimately responsible for ensuring that those payments are made.  *See* Agreement ¶¶ 5.3, 5.4, 6.

---

[2] Of course, even if the Operating Standards *were* limited to items such as required fixtures and equipment (it is not), that too would be indicative of Parea's overall control over the business.  *See, e.g.*, *Ocampo*, 2016 U.S. Dist. LEXIS 125928, at *26-27 (concluding that allegations that putative joint employer imposed "requirements for the purchase of certain furniture and equipment" were specific illustrations of that company's ability to "set and enforce[] requirements for the operation of the [business]").

Finally, with respect to employment records, the Amended Complaint alleges that while KGIM is responsible to maintain employee payroll records, those records belong to Parea, not KGIM. Am. Compl. ¶ 24-25. This, too, is supported by the text of the Agreement, which requires KGIM to create and maintain records, including payroll and employee records, specifies that all such "books and records" of the Restaurant belong to Parea, and requires KGIM to return employee records to Parea when the Agreement terminates. Agreement ¶¶ 5.5, 6, 12(c). The imposition of specific recordkeeping requirements analogous to those imposed on KGIM by the Agreement here have been found to be indicative of the putative joint employer's overall control. *See Ocampo*, 2016 U.S. Dist. LEXIS 125928, at *20, 25-26 (denying motion to dismiss and considering the franchisor's "mandatory recordkeeping requirements" imposed on its franchisee when assessing its overall control over the business).

As the above demonstrates, Plaintiffs have alleged facts supporting all four *Carter* factors that are bolstered by the terms of the Agreement. As such, dismissal of Parea is inappropriate here. Defendants' arguments to the contrary are not persuasive. For example, while they focus much attention on the fact that the Agreement requires KGIM to perform the day-to-day management and operation of the Restaurant, *see* Parea Mem. at 9, the Second Circuit has repeatedly explained that entities may meet the "formal control" test even where such control is "restricted, or exercised only occasionally." *Herman*, 172 F.3d at 139 ("limitations on control do not diminish the significance of its existence"); *see also Barfield*, 537 F.3d at 142; *Lin v. Great Rose Fashion, Inc.*, No. 08-cv-4778, 2009 U.S. Dist. LEXIS 46726, at *46 (E.D.N.Y. June 3, 2009) ("The Second Circuit has also recognized that a company can de facto set employees' wages and dictate the terms and conditions' of their employment, though they do not literally pay the workers, where those employees perform work exclusively in service of that company." (alterations and quotation marks

omitted)). Moreover the fact that the Agreement specifies that Restaurant employees are the "employees or independent contractors" of KGIM is simply irrelevant—it is the 'economic realities' that govern, not the Defendants' self-serving labels. *See, e.g.*, *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003) ("An employer's characterization of an employee is not controlling . . . for otherwise there could be no enforcement of any minimum wage or overtime law. . . . "[It] is the test of 'economic reality" [that] governs how a relationship of employment is to be characterized in relation to the FLSA.").

### 2.    *Functional Control Factors*

In addition to sufficiently alleging facts supporting the *Carter* factors, the Amended Complaint and Agreement also demonstrate that Parea "functionally controlled" the Plaintiffs. First, Parea cannot dispute that its "premises and equipment were used for the [P]laintiffs' work" as it owned the Restaurant, Am. Compl. ¶ 4, and the Agreement specifically prohibits KGIM from selling or disposing "any portion of the Restaurant," Agreement ¶ 3.2(c). This satisfies the first *Zheng* factor. Moreover, the Amended Complaint alleges that the Plaintiffs worked at the Restaurant for years, and there is no allegation that they worked for other employers, thus satisfying the sixth *Zheng* factor, which considers whether the plaintiff "worked exclusively or predominantly for the alleged employer." Am. Compl. ¶¶ 29-30.

The second functional control factor considers whether the "direct employer" (in this case KGIM), "had a business that could or did shift as a unit from one putative joint employer to another." *Zheng*, 355 F.3d at 72. "This factor 'is relevant because a direct employer that seeks business from a variety of putative joint employers is less likely to be part of a subterfuge arrangement than a direct employer that serves a single client.'" *Dixon v. Zabka*, No. 11-cv-982 (MPS), 2014 U.S. Dist. LEXIS 159692, at *20 (D. Conn. Nov. 13, 2014) (internal alterations

omitted) (citing *Zheng*, 355 F.3d at 72).  Here, the Agreement specifies that KGIM is retained on an "exclusive basis" to manage the Restaurant on behalf of Parea.  Agreement ¶ 3.1.  Moreover, because all employees at the Restaurant are hired "on behalf" of Parea, who owns the employment records, there is no indication that KGIM could shift its operations at the Restaurant to a different location.  Agreement ¶¶ 5.5, 6, 12(c).  Thus, this factor weighs in favor of Parea's employer status.  *See Dixon*, 2014 U.S. Dist. LEXIS 159692, at *20-21 (finding that second factor weighed in favor of joint employer status where the relevant agreement required the direct employer to provide services to the putative joint employer on an "exclusive basis" and could not shift their business away to another "purported joint employer").

The third factor examines the extent to which Plaintiffs performed a "discrete line job that was integral to [Parea's] process of production."  *Zheng*, 355 F.3d at 72.  Where the nature of the job at issue does not involve a production line or the like, such as in the case of the service jobs performed by Plaintiffs here, courts examining this factor focus on whether the jobs are "integral" to the putative joint employer's business.  *See, e.g.*, *Barfield*, 537 F.3d at 145 (applying the third *Zheng* factor to conclude that there was no issue of material fact about whether a nurse "performed work integral to [a hospital's] business").  Here, there can be no question that restaurant servers like Plaintiffs were integral to the success of Parea's Restaurant.  *Cf. Hart v. Rick's Cabaret Int'l Inc.*, 967 F. Supp. 2d 901, 921 (S.D.N.Y. 2013) ("No reasonable jury could conclude that exotic dancers were not integral to the success of a club that marketed itself as a club for exotic dancers.").

The forth *Zheng* factor asks whether "responsibility under the contracts could pass from one [direct employer] to another without material changes."  As explained by the Second Circuit, this factor will weigh in favor of joint employment where, in the event the direct employer (here KGIM) were replaced with another direct employer, "the same employees would continue to do

the same work in the same place." *Zheng*, 355 F.2d at 74.  Here, the Agreement expressly contemplates this eventuality on numerous occasions. The Agreement requires KGIM to turn over to Parea all records relating to the operation of the Restaurant and its employees in the event the Agreement is terminated. Agreement ¶ 12(c).  Indeed, there is no provision in the Agreement that requires the termination of the Restaurant's employees if KGIM or Parea terminates the Agreement. *See generally* Agreement.  Further, in the event the Agreement is terminated, KGIM is required to assist Parea in "facilitate[ing] an orderly transition of the management of the Restaurant," thus contemplating that another entity would fill KGIM's shoes.  *Id.* ¶ 12(c).  In addition, the fact that all Restaurant licenses are held in the name of Parea, not KGIM, demonstrates that another management company could easily step into KGIM's management position without disruption.

Finally, with respect to the fifth *Zheng* factor (the degree to which Parea and its agents supervised Plaintiffs' work), the Amended Complaint alleges that Parea had "ultimate authority over . . . employees." Am. Compl. ¶ 28.  As discussed above, the Agreement itself contemplates that Parea will play a role in the disciplining and supervision of employees, as demonstrated by the "Human Resources" section of that Agreement, which requires KGIM to forward "serious" customer complaints to Parea with its "recommendations." Agreement ¶ 6.  Further, Parea's ability to promulgate its Operating Standards, and its imposition of payroll and employee recordkeeping requirements on KGIF is suggestive of its ability to supervise the Restaurant's employees.  *See Cordova v. SCCF, Inc.*, No. 13-cv-5665, 2014 U.S. Dist. LEXIS 97388, at *17-18 (S.D.N.Y. July 16, 2014) (finding joint employment sufficiently alleged and considering, in connection with the fifth *Zheng* factor, the allegations that the company "created management and operation policies" and required the use of certain record keeping systems).

In sum, the allegations in the Amended Complaint, even considered in connection with the terms of the Agreement, are more than sufficient to plausibly allege that Parea exercised "functional control" over the Restaurant. Parea's only argument on this front relies on a completely distinguishable out-of-Circuit case in which the plaintiff's only allegation was the conclusory assertion that a franchisor was "an employer within the meaning of the FLSA." *Chen v. Domino's Pizza, Inc.*, No. 09-107 (JAP), 2009 U.S. Dist. LEXIS 96362, at *13 (D. N.J. Oct. 16, 2009). Here, as laid out above, Plaintiffs have made specific allegations about the relationship between Parea, KGIM, and the Restaurant employees, all of which are supported by the terms of the very Agreement Parea cites. *See* Am. Compl. ¶ 19-28. As demonstrated by the above discussion, those allegations, read in conjunction with the Agreement, are more than sufficient to put Parea "on notice of the theory of employer liability upon which [their] claims are based," which is all Plaintiffs are required to accomplish at the pleading stage. *Downey*, 238 F. Supp. 3d at 523 (internal quotation marks omitted).

As a final matter, Parea argues that the Amended Complaint does not adequately differentiate between its actions and those of the other Defendants with respect to the overtime and minimum wage violations alleged. *See* Parea Mem. at 4, 7-8. This is a complete red herring. As numerous courts have recognized, where joint employer status has been shown, "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'" *E.g.*, *Olvera*, 73 F. Supp. 3d at 204-05 (quoting 29 C.F.R. § 791.2(a)) (brackets omitted). Thus, as a joint employer, Parea, like the other Defendants, was responsible for ensuring that Plaintiffs were correctly paid for all hours worked, properly notified of the tip credit, and were not forced to share their tips with tip-ineligible employees. As a result, the facts

in the Amended Complaint that allege violations of these requirements are just as applicable to Parea as to all other Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Parea's motion to dismiss in its entirety.

Dated: New York, New York
May 10, 2018

                                         Respectfully submitted,

                                         By: /s/ *Lucas C. Buzzard*
                                         D. Maimon Kirschenbaum
                                         Josef Nussbaum
                                         Lucas C. Buzzard
                                         JOSEPH & KIRSCHENBAUM LLP
                                         32 Broadway, Suite 601
                                         New York, NY  10004
                                         (212) 688-5640

                                         *Attorneys for Plaintiffs*