UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENRY ARGUDO and DIEGO SANAY,
on behalf of themselves and others
similarly situated,

        Plaintiffs,

        v.

PAREA GROUP LLC, d/b/a TRATTORIA IL
MULINO, IMNY GS LLC d/b/a IL MULINO
TRIBECA, GFB RESTAURANT CORP. d/b/a IL
MULINO DOWNTOWN, WONDERFUL
RESTAURANT LLC d/b/a IL MULINO UPTOWN,
K.G. IM MANAGEMENT, LLC, PASTA
PERFECT LLC, IM 60 STREET, IL MULINO
USA, IM LLC-I, BRIAN GALLIGAN, and
GERALD KATZOFF,

        Defendants.

No. 18 CV 678 (JMF)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

### JOSEPH & KIRSCHENBAUM LLP

D. Maimon Kirschenbaum
Josef Nussbaum
32 Broadway, Suite 601
New York, NY 10004
Telephone: (212) 688-5640

December 3, 2018

# Table of Contents

I.   PRELIMINARY STATEMENT ............................................................................................ 1

II.   BACKGROUND ............................................................................................................... 3

  A.   The Il Mulino Restaurants are a Centrally Controlled, Uniform Operation ...................... 4

  B.   Applicable Legal Standards Concerning Tip Credit Practices ............................................ 4

    (1)   The FLSA Requirements ................................................................................................ 4

    (2)   The NYLL Requirements .............................................................................................. 5

    (3)   Applicable Legal Standards Concerning Tip Sharing Practices.................................... 7

    (4)   Defendants' Compensation and Tipping Practices at All Il Mulinos........................... 7

    (5)   Defendants Failed to Give Tipped Employees the Wage Notices and Statements
        Required Under the WTPA .......................................................................................... 9

    (6)   Defendants Forced Employees At Trattoria Il Mulino to Share Tips with Tip
        Ineligible Employees .................................................................................................. 10

III.   ARGUMENT .................................................................................................................. 11

  A.   Plaintiffs Have Met The Minimal Burden Necessary For This Court To Grant Conditional
     Collective Certification .................................................................................................... 11

    (1)   Certifying a Collective Action and Sending Expedited Notice to "Similarly Situated"
        Employees Fulfills the FLSA's Broad Remedial Purposes ........................................ 11

    (2)   The Standard for Conditional Certification and Notice is Lenient............................. 12

    (3)   Plaintiffs Have Made the Modest Factual Showing Required for Conditional
        Certification ............................................................................................................... 13

  B.   Plaintiffs Satisfy The Requirements For Fed. R. Civ. P. 23 Class Certification .............. 14

    (1)   Plaintiffs Satisfy The Requirements of Rule 23(a)..................................................... 15

    (2)   Class Certification Under Rule 23(b)(3) is Appropriate ............................................ 20

    (3)   Plaintiffs' Counsel Should be Appointed as Class Counsel ...................................... 23

    (4)   The Proposed Notices Satisfies The Requirements Of Rule 23(C)(2)(B)................. 24

IV.   CONCLUSION................................................................................................................ 24

# **Table of Authorities**

**Cases**

*Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670 (D. Md. 2012).......................................... 7

*Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825 (PKC), 2011 U.S. Dist. LEXIS 60882
(S.D.N.Y. June 1, 2011)........................................................................................................... 16

*Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, 2016 U.S. Dist. LEXIS
127425,(E.D.N.Y. 2016)........................................................................................................... 12

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)............................................................................. 22

*Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770.......................................................... 7

*Cuzco v. F&J Steaks 37th St. LLC*, 2014 U.S. Dist. LEXIS 72984 (S.D.N.Y. 2014) ................... 8

*Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859 (PKC), 2008 U.S. Dist. LEXIS
86577 (S.D.N.Y. Oct 23, 2008) .............................................................................................. 15

*Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125 (S.D.N.Y. 2003)........................................... 22

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007)............................. 16

*Fonseca v. Dircksen & Talleyrand Inc.*, 2015 U.S. Dist. LEXIS 136427
(S.D.N.Y.  2015) ................................................................................. 4, 21, 23, 25

*Glazer v. Whirlpool Corp.*, 2013 U.S. App. LEXIS 14519 (6th Cir. Ohio 2013) ....................... 23

*Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353 (E.D.N.Y. 2009) .................................................. 17

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011) ............................. 22

*Hernandez v. JRPAC Inc.*, 2016 U.S. Dist. LEXIS 75430 (S.D.N.Y. 2016)................................. 9

*Hicks v. T.L. Cannon Corp.*, 2014 U.S. Dist. LEXIS 108434 (W.D.N.Y. 2014) ................... 4, 20

*Huo v. Go Sushi Go 9th Ave.*, 2014 U.S. Dist. LEXIS 51621 (S.D.N.Y. 2014)........................... 12

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007).................. 18, 19, 22

*In re Initial Pub. Offerings Sec. litig.*, 471 F.3d 24 (2d Cir. 2006)............................................. 16

*In re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996)........................ 22

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)..................................... 23

*In Re Visa Check/Mastercard Antitrust Litigation*, 280 F.3d 124 (2d Cir. 2001) .................. 22,24

*Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160 (JPO), 2013 U.S. Dist. LEXIS 38675
(S.D.N.Y. Mar. 20, 2013) ........................................................................................................ 18

*Jaime v. David & Son's Constr. Corp.*, No. CV 17-1499 (ADS)(ARL), 2018 U.S. Dist. LEXIS
149401 (E.D.N.Y. Aug. 30, 2018)............................................................................................. 8

*Kim v. Kum Gang, Inc.*, 2015 U.S. Dist. LEXIS 39095 (S.D.N.Y. 2015).................................... 7

*Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475 (S.D.N.Y. 2016) ........................................ 15

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008).................................... 15

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) ................................ 14

*Malloy v. Richard Fleischman & Assocs.*, No.  09 Civ. 322 (CM),
2009 U.S. Dist. LEXIS 51790 .................................................................................................. 14

*Marin v. Apple-Metro, Inc.*, 2017 U.S. Dist. LEXIS 165568 (E.D.N.Y. 2017) ........................... 20

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .......................................................... 17, 18

*Masoud v. 1285 Bakery, Inc.*, 2017 U.S. Dist. LEXIS 14927 (S.D.N.Y. 2017).......................... 21

*Mendez v. Pizza on Stone, LLC*, 2012 U.S. Dist. LEXIS 108605 (S.D.N.Y. Aug. 1, 2012)........ 21

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)............................................................. *passim*

*Myers v. The Hertz Corp.*, 2007 U.S. Dist. LEXIS 53572 (E.D.N.Y. 2007)................................ 17

*Niemiec v. Ann Bendick Realty*, No. 04-CV-897, 2007 U.S. Dist. LEXIS 98840

(E.D.N.Y. March 30, 2007) ................................................................................... 25

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004) ........................................ 25

*Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002 (DLC), 2010 U.S. Dist. LEXIS 93180
(S.D.N.Y. Sept. 7, 2010) ........................................................................................ 14

*Reyes v. Lincoln Deli Grocery Corp.*, 2018 U.S. Dist. LEXIS 95304 (S.D.N.Y. 2018) ............. 11

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ....................................................... 19

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001)) ........................... 18

*Salinas v. Starjem Rest. Corp.,* 123 F. Supp. 3d 442 (S.D.N.Y. 2015) ............................. 9

*Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.R.D. 366 (S.D.N.Y. 2017) .......................... 21

*Schear v.  Food Scope*, 297 F.R.D. 124 .............................................................. *passim*

*Selzer v. Bd. of Educ. of City of N.Y.*, 112 F.R.D. 176 (S.D.N.Y. 1986) ........................... 18

*Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011) .............. 4,7, 13, 20

*Spencer v. No Parking Today, Inc.*, 2013 U.S. Dist. LEXIS 36357 (S.D.N.Y. 2013) ................ 19

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196
(2d Cir. 2008) ................................................................................................ 16, 17

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039
(S.D.N.Y. Sept. 29, 2006) ................................................................................. 16, 24

*Trinidad v. Breakaway Courier*, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. 2007) ..................... 24

*Vargas v. Howard*, 324 F.R.D. 319 (S.D.N.Y. 2018) ............................................... 4, 21, 23

*Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698 (SAS), 2005 U.S. Dist. LEXIS 709 (S.D.N.Y.
Jan. 18, 2005) ................................................................................................ 24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011) ............................ 18

*Widjaja v. Kang Yue USA Corp.*, 2016 U.S. Dist. LEXIS 19563
(E.D.N.Y. Feb. 17, 2016) .................................................................................... 11

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005) ................................... 15

**Statutes**

Fed. R. Civ. P. 23 ........................................................................................... 16, 21

NYCRR § 146-1.3 .................................................................................................. 8

29 C.F.R. § 531.59 ............................................................................................... 7

FLSA, 29 U.S.C. § 216(b) ..................................................................................... 3, 5

N.Y. Code Comps. R. & Regs. tit. 12, § 146-2.14 ....................................................... 9

N.Y. Lab. Law § 652 ......................................................................................... 7,8,11

New York Labor Law § 196-d .................................................................................. 5, 9

NYCRR § 146-2.1 ................................................................................................ 13

NYCRR § 146-2.2 ........................................................................................... 8, 9, 10

NYLL § 195 .................................................................................................... 11, 12

NYLL § 198 ....................................................................................................... 12

Plaintiffs Henry Arugdo and Diego Sanay (collectively, "Plaintiffs") submit this memorandum of law in support of their motion to certify this Action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b) and as a New York Labor Law ("NYLL") class action pursuant to Fed. R. Civ. P. Rule 23.[1]

## I.    PRELIMINARY STATEMENT

On January 26, 2018, Plaintiffs filed this action on behalf of all tipped employees (including servers, runners, bussers and bartenders (collectively the "Tipped Employees") who—in the six years prior to the filing of the lawsuit—worked at Il Mulino restaurants located in the followings areas of Manhattan: Gramercy/Union Square, the Upper East Side, Soho, Greenwich Village and Tribeca (the five locations are hereinafter collectively referred to as "IM").  In the Complaint, Plaintiffs allege that IM and its owners/operators Defendants Gerald Katzoff and Brian Galligan (collectively, with IM, the "Defendants"[2]) violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by (1) failing to pay employees for all hours they worked; (2) improperly taking a tip credit for the wages they paid to Tipped Employees, and, as a result, failing to pay Tipped Employees the minimum wage for all hours worked and the proper overtime premium for hours worked in excess of 40 in a week; and (3) failing to provide Tipped Employees with the appropriate wage notices and statements required under New York State's Wage Theft Prevention Act ("WTPA").  Plaintiffs also allege that Defendants

---

[1]  In support of their motion, Plaintiffs submit the following declarations: the December 3, 2018 Declaration of Josef Nussbaum in support of Plaintiffs' Motion for Class Certification, ("Nussbaum Decl.") and exhibits annexed thereto (cited as "Nussbaum Ex. __"); the November 30, 2018 Declaration of Diego Sanay ("Sanay Decl."); the November 29, 2018 Declaration of Marco Morales ("Morales Decl."); the November 29 2018 Declaration of Miljan Zecevic ("Zecevic Decl."); the December 3, 2018 Declaration of Liviu Movileanu ("Movileanu Decl."); the December 3, 2018 Declaration of Henry Arugdo ("Arugdo Decl."); and the December 3, 2018 Decl. of Luis Gonzalez ("Gonzalez Decl.").

[2]  For the purposes of the memorandum, the term Defendants refers to all Named Defendants in this Action with the exception of Parea Group LLC with respect to which the Action is stayed. *See* Dkt. No. 77.

improperly forced Tipped Employees at the Trattoria Il Mulino location to share their tips with employees who do not customarily receive tips.

Put simply, Defendants admit that they paid all Tipped Employees pursuant to a tip credit and that all employees were subject to identical payroll practices at the restaurant.  Plaintiffs allege and the record is clear that Plaintiffs and their co-workers did not receive proper notice that Defendants would be taking a tip credit. To be sure, in discovery in this Action, Defendants agreed to produce any and all written tip credit notices.  However, consistent with Plaintiffs' testimony—and despite the fact that Defendants employed more than 250 individuals who were paid pursuant to a tip credit during the relevant statutory period—Defendants could not produce any notices other than five facially non-compliant notices.  Thus, Defendants cannot escape the reality that the Tipped Employees were all not properly informed of the tip credit.

Under the clear and established law in this Circuit and District, cases, such as this one, where restaurant employees allege restaurant-wide wage and payroll practice violations have been found to be perfectly suited for class/collective treatment. *See, e.g., Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234, 240 (2d Cir. 2011). More specifically, in cases where plaintiffs allege almost identical facts regarding their employers' company-wide WTPA payroll practice violations as the facts Plaintiffs allege here, Courts have found class certification appropriate. *See, e.g., Vargas v. Howard,* 324 F.R.D. 319 (S.D.N.Y. 2018); *Fonseca v. Dircksen & Talleyrand Inc.*, 2015 U.S. Dist. LEXIS 136427 (S.D.N.Y.  2015); *Hicks v. T.L. Cannon Corp.*, 2014 U.S. Dist. LEXIS 108434 (W.D.N.Y. 2014). As set forth below, and for many of the same reasons set forth in *Vargas, Fonseca, Hicks* and the many other cases in this Circuit certifying Rule 23 Classes for the wage and hour violations being litigated here, this case is also perfectly suited for class certification.

By the instant motion, Plaintiffs respectfully request that the Court:

(1) Conditionally certify this action as a representative collective action pursuant to the FLSA, 29 U.S.C. § 216(b) for the purposes of Plaintiffs' minimum wage and overtime claims, on behalf of all IM Tipped Employees who worked from January 26, 2015 until the present (the "FLSA Period") (the "FLSA Covered Employees");

(2) Certify this action as a Rule 23 class action pursuant to Fed. R. Civ. P. Rule 23 for the purposes of Plaintiffs' tip credit and WTPA violation claims, on behalf of all Il Mulino Tipped Employees who worked at IM from January 26, 2012 until the present (collectively, the "Class Members");

(3) Certify a Subclass of Tipped Employees who worked at the Trattoria Il Mulino location from January 26, 2012 until the present for the purposes of Plaintiffs' NYLL §196-d claim that they were required to share tips with tip ineligible employees;

(4) Appoint Plaintiffs Henry Argudo and Diego Sanay as class representatives of the Class and Subclass;

(5) Appoint Plaintiffs' counsel, Joseph & Kirschenbaum LLP, as Class counsel;

(6) Order that Defendants produce, in Microsoft Excel format, the names, last known address, alternate address(es) (if any), all known telephone numbers, all known e-mail addresses, social security numbers, dates of birth, dates of employment and job titles of all Class Members; and

(7) Order Court facilitated notice of this FLSA collective action and NYLL class action to the Class/Collective Members in the form attached as "Exhibit A" to the Declaration of Josef Nussbaum in support of this motion.

(8) Posting of the Notice, along with the consent forms, in the restaurants in a conspicuous place where putative class/collective members are likely to view it.

## II.    BACKGROUND

Defendants own and operate IM restaurants in Manhattan.[3] Plaintiffs and Opt-in Plaintiffs

worked at various IM restaurants as Tipped Employees within six years of the filing of the

Complaint.[4] Throughout the time period covered by this lawsuit, the Tipped Employees were all

---

[3] *See* Second Amended Complaint ("SAC") (Dkt. No. 91) at ¶¶ 5-10; 14; Answer to SAC ("Answer) (Dkt. No. 92) at ¶ 3; Nussbaum Decl, Ex. D at ¶¶ 2-3, 8-9.
[4] Sac at ¶¶ 32-33; Answer (no responsive paragraphs).

paid pursuant to a tip credit and all received identical wage statements.[5] As IM did not notify Plaintiffs and putative class/collective members of the tip credit, Defendants were not entitled to pay employees a lower minimum wage.  In addition, at the Trattoria Il Mulino location, Defendants illegally retained Tipped Employees' tips by requiring them to share tips with tip-ineligible employees.[6]

### A.  The Il Mulino Restaurants are a Centrally Controlled, Uniform Operation

The IM restaurants' operations are interrelated and centrally controlled.  In discovery, Defendants Katzoff and Galligan both admitted that they have ownership interests in all of the Defendant IM restaurants.[7] In addition to shared ownership, the IMs share common management and a head chef.[8]  The restaurants share a web site in which they brand themselves as one restaurant.[9] Payroll and HR policies for all the Defendant restaurants are all centrally controlled at one location.[10]  Specifically, Defendant Il Mulino USA provides payroll services to all the IM restaurants.[11] Most significantly, the payroll policies and practices challenged in the instant lawsuit are uniform at all the IM restaurants Manhattan.[12]

### B.  Applicable Legal Standards Concerning Tip Credit Practices

### (1)  The FLSA Requirements

Under the FLSA, an employer must pay tipped employees the full minimum wage *unless* the employer satisfies certain requirements, in which case the employer may pay a lower direct

---

[5]  Nussbaum Decl. Ex. C ("Galligan Dep.") at 73:2-12, 136:17-22, 194:20-195:22, 239:3-8; Sanay Decl. ¶ 2 ; Morales Decl. ¶ 2; Zecevic Decl. ¶ 2; Movileanu Decl. ¶ 2; Argudo Decl. ¶ 6; Gonzalez Decl. ¶ 2.

[6]  Sanay Decl. ¶¶ 9-23; Morales Decl. ¶¶  9-17; Zecevic Decl. ¶¶  9-22; Argudo Decl. ¶¶  11-24; Gonzalez Decl. ¶¶ 9-22.

[7]  Galligan Dep. 9:8-9, 21:24-22:4; 26:14-27:18; Nussbaum Ex. B ("Katzoff Dep.") 12:16-13:5, 45:5-8.

[8]  Galligan Dep. 61:16-20; Katzoff Dep. 49:5-12, 44:2-8.

[9]  Katzoff Dep. 84:5-9 (ilmulino.com).

[10]  Katzoff Dep. 33:12-19, 36:21-37:4, 43:20-25, 39:10-24; Galligan Dep. 49:8-50:3, 52:20-25, 61:16-20; 106:9-13

[11]  Nussbaum Decl., Ex. E (Declaration of Brian Galligan dated October 31, 2014) at ¶ 4.

[12]  Katzoff Dep. 33:12-34:10, 36:21-37:4; Galligan Dep. 106:9-13, 131:5-15, 142:4-143:15, 147:9-148:18; 153:17-21, 205:10-206:2; Sanay Decl. ¶ 8; Morales Decl. ¶ 8; Zecevic Decl. ¶ 8; Movileanu Decl. ¶ 6; Gonzalez Decl. ¶ 8; Argudo Decl. at ¶ 5, 10.

cash wage. 29 U.S.C. § 203(m). Employers may not take a tip credit with regard to an employee's wages unless (1) "such employee has been informed by the employer of the provisions of this subsection," and (2) "all tips received by such employee have been retained by the employee." *Id.*; *accord Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 680-81 (D. Md. 2012). These two requirements are "'strictly construed,' and 'must be satisfied even if the employee received tips at least equivalent to the minimum wage.'" *Dorsey*, 888 F. Supp. 2d at 681.  An employer is not eligible for the tip credit unless it has informed its tipped employees of, among other things, the following:

 (1) The amount of the cash wage that is to be paid to the tipped employee by the employer; and

 (2) [T]he additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee;

29 C.F.R. § 531.59; *e.g., Kim v. Kum Gang, Inc.*, 2015 U.S. Dist. LEXIS 39095, at *78-79 (S.D.N.Y. 2015).  Moreover, in order to avail itself of the tip credit, the employee must retain all tips received, although an employer may require her may pool her tips with employees "who customarily and regularly receive tips." *Id*.  "Thus, an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with […] employees who do not provide direct customer service […]." *Shahriar*, 659 F.3d 234; *see also Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770, at *47-48 (S.D.N.Y. 2007) (finding that an employer could not avail itself of the tip credit where it misappropriated portions of employees' tips).

### (2) The NYLL Requirements

 The NYLL requires employers to pay non-exempt employees minimum wages and overtime wages. *See* NYLL § 652(1). Similar to the FLSA, under the NYLL, employers may take a credit for tips received by a food service employee in satisfying the minimum wage and

overtime obligations. *See id*. § 652(4). The tip credit is available only when "certain preconditions are met.'" *Cuzco v. F&J Steaks 37th St. LLC*, 2014 U.S. Dist. LEXIS 72984, *5 (S.D.N.Y. 2014) (quotations omitted). Specifically, in order to take advantage of the tip credit, employers must notify their employees of their intention to do so, as set forth below.

Under the New York State Department of Labor's regulatory scheme, "[a]n employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2" of the Hospitality Industry Wage Order.  N.Y. Comp. Codes R. & Regs, tit. 12 ("NYCRR"), § 146-1.3 (emphasis added). Section 146-2.2 of the Wage Order is titled "Written notice of pay rate, tip credit and pay day." NYCRR § 146-2.2.  It states that "an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." *Id.* § 146-2.2(a). Such written notice is required "prior to the start of employment" and "prior to any change in the employee's hourly rates of pay." *Id.* § 146-2.2(a), (b).

The New York State minimum wage changed at the end of every year between 2013 and 2017.  *See, e.g., Jaime v. David & Son's Constr. Corp*., No. CV 17-1499 (ADS)(ARL), 2018 U.S. Dist. LEXIS 149401, at *13 (E.D.N.Y. Aug. 30, 2018).  Accordingly, under § 146-2.2(a), New York employers who took advantage of the tip credit were required to provide their employees with a new written notice every year from 2013 through 2018.

The vast majority of courts have interpreted the provisions of §§ 146-1.3 and 146-2.2 to mean exactly what they say: that, "as required in section 146-2.2," employers must provide

employees with "written notice" containing the information set forth in § 146-2.2 before they

may take advantage of the tip credit under § 146.1-3. *See, e.g., Hernandez v. JRPAC Inc.*, 2016

U.S. Dist. LEXIS 75430, at *81 (S.D.N.Y. 2016) ("Notice of the tip credit under the NYLL . . .

must be written."); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015)

("Under the current regulations, an employer may not take a tip credit unless the employer has

given the employee written notice […]"). Finally, per the regulations, employers must keep

employees' acknowledgment of receipt of the notice on file for six years. NYCRR § 146-2.2(c).

### (3) Applicable Legal Standards Concerning Tip Sharing Practices

NYLL § 196-d ("§ 196-d") bars employers from requiring tipped employees to share tips

with non-service employees, regardless of the employees' hourly rate of pay. "By its plain terms,

§ 196-d bar employers from requiring tipped employees to share tips with employees who do not

perform direct customer service – *i.e.*, employees who are not 'busboy[s] or similar employee[s]'

and employees who are managers or 'agent[s]' of the employer." *Shahriar*, 659 F.3d at 240

(alteration in original). Under both the FLSA and § 196-d, an employee is a non-service

employee who cannot receive tips where he has only "*de minimis*," "occasional or incidental"

customer interaction. NYCRR § 146-2.14 ("[Tip-eligible e]mployees must perform, or assist in

performing, personal service to patrons at a level that is a principal and regular part of their

duties and is not merely occasional or incidental."); *see also, e.g., Schear*, 297 F.R.D. at 131.

### (4) Defendants' Compensation and Tipping Practices at All Il Mulinos

As set forth above, in discovery in this Action, Defendants admitted that putative Class

Members at all IM locations were subject to the same payroll policies and practices.[13]

---

[13] *Id.*

Defendants also admitted that all Class Members were paid pursuant to a tip credit.[14]  However, IM did not comply with the FLSA as they did not inform employees what wage rate they would be paid or the amount the restaurant would be taking as a tip credit.[15]  In addition, IM decidedly did not comply with the requirements of § 146-2.2 because, with the exception of a handful of facially invalid notices provided to no more than five employees in 2016 only, between 2011 and 2017, IM failed to give employees at any of its Manhattan locations wage rate notices at all.[16] The notices Defendants provided to only five employees out of the tens of employees they employed in 2016 are patently invalid as these notices failed to list the allowances the restaurant was taking against the minimum wage.[17]  To be sure, in discovery in this Action, Defendants agreed to produce all notices and acknowledgment forms they provided to their employees at the Manhattan IMs.[18]  Other than the handful of "notices" provided to five employees in 2016, Defendants did not produce any other notices.[19]

As explained *supra* (pg. 6), since the New York State minimum wage rate changed every years between 2013 and 3018, Defendants were required to provide all Tipped Employees with a new written notice every year of the limitations period since 2013.  As Defendants were (a) required to give the Tipped Employees written notice upon hiring and at the start of every year since 2013; (b) were required to keep acknowledgment of receipt of these notices for at least six years; and (c) have inexplicably not produced any such acknowledgments (other than a mere five deficient notices), the record illustrates that as a policy Defendants did not provide Tipped Employees any notice at all.

---

[14] "Galligan Dep." at 73:2-12, 136:17-22, 194:20-195:22, 239:3-8; Sanay Decl. ¶ 2 ; Morales Decl. ¶ 2; Zecevic Decl. ¶ 2; Movileanu Decl. ¶ 2; Argudo Decl. ¶ 6; Gonzalez Decl. ¶ 2.

[15] Sanay Decl. ¶¶  3-6; Morales Decl. ¶¶  3-6; Zecevic Decl. ¶¶  3-6; Movileanu Decl. ¶¶  2-5; Argudo Decl. ¶¶  7-9; Gonzalez Decl. ¶¶  3-6.

[16] *Id*.; Nussbaum Decl. at ¶¶ 9; Ex. F.

[17] *Id*.

[18] Nussbaum Decl. at ¶¶ 7-9.

[19] *Id*. at ¶ 9.

Under the clear and established law in this Circuit, since Defendants failed to provide employees with the requisite notices of the tip credit allowances that Defendants applied, Defendants were not entitled to apply the tip credit to these employees' wages.  Therefore, Defendants must pay Plaintiffs and Class Members the difference between the full minimum wage and the tip credit minimum wage. *E.g., Widjaja v. Kang Yue USA Corp*., 2016 U.S. Dist. LEXIS 19563, at *4 (E.D.N.Y. Feb. 17, 2016).  In addition, as "both the FLSA and NYLL require that covered employees pay the higher of the federal or state minimum wage applicable during any given time period[,]" Defendants' failure to pay the proper New York  State overtime rate constitutes a violation of federal overtime laws as well. *Reyes v. Lincoln Deli Grocery Corp*., 2018 U.S. Dist. LEXIS 95304, at *14 (S.D.N.Y. 2018) (citing 29 U.S.C. § 218(a); N.Y. Lab. Law § 652).[20]

### (5) Defendants Failed to Give Tipped Employees the Wage Notices and Statements Required Under the WTPA

Under NYLL § 195(1) and (3), employers are required to furnish their employees with wage notices and wage statements containing information specified by statute. Pursuant to § 195(1), Defendants were required to give employees "at the time of hiring" a written notice explaining the elements of how the employee would be paid *See* NYLL § 195(1)(a).  As outlined above, from 2012 until 2015 and again in 2017, Defendants never provided any of the putative Class Members with these notices.  While Defendants did provide a handful of notices in 2016,

---

[20] To be clear, in 2015, the New York State tip credit minimum wage which Tipped Employees were paid was $5.00.  During this time, the federal minimum wage was $7.25. Accordingly, FLSA Covered Employees who opt-in to this lawsuit have claims for the difference between the full minimum wage and the tip credit wage for any wages they were paid in 2015.  By contrast, in 2016 and 2017 Tipped Employees were paid the New York State tip credit minimum wages of $7.50 and, in 2018, Tipped Employees were paid the New York State tip credit minimum wages of $8.65 or $8.00. *See* NYCRR §146-1.3.  During this time, the federal minimum wage remained $7.25.  Since the wages FLSA Covered Employees were paid in those years was higher than the federally mandated minimum wage, putative FLSA Covered Employees do not have federal tip credit claim during this time though they continue to have overtime claims under federal law. *See, e.g., Lanzetta v. Florio's Enters*., 763 F. Supp. 2d 615, 623-624 (S.D.N.Y. 2011).

those notices did not comply with the NYLL's requirements.  As a result, Class Members who were hired during the limitations period are entitled to recover the statutory damages authorized under NYLL § 198(1-b). *See, e.g., Huo v. Go Sushi Go 9*[th] *Ave.*, 2014 U.S. Dist. LEXIS 51621, at *15 (S.D.N.Y. 2014).

Defendants were also required to furnish Plaintiffs with written statements accompanying every payment of wages listing and "deductions; allowances, if any, claimed as part of the minimum wage." NYLL § 195(3).  Defendants admit that all putative Class Members received wage statements that listed identical categories of information.[21] However, the paystubs did not meet the requirements of NYLL § 195(3) since, among other things, they did not list the tip credit allowances Defendants were claiming against the minimum wage. As a result, Tipped Employees at all IM locations are entitled to recover the statutory damages authorized under NYL § 198(1-d).  *See, e.g., Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc*., 2016 U.S. Dist. LEXIS 127425, at *88 (E.D.N.Y. 2016).

### (6) Defendants Forced Employees At Trattoria Il Mulino to Share Tips with Tip Ineligible Employees

Defendants also required Tipped Employees at the Trattoria location to participate in a mandatory tip pool created by the restaurant that included certain tip-ineligible employees, namely, expeditors and dishwashers.[22] The dishwashers were responsible for cleaning and polishing the restaurant's glassware and silverware.[23] Dishwashers performed their duties in the dishwashing area which was away from the view of customers.[24] The expeditors' job duties were to stand at an expeditor station, which was located in the kitchen, in order to provide assistance

---

[21] Galligan Dep. 194:20-195:22; 239:3-8.
[22] Sanay Decl. ¶¶ 9-23; Morales Decl. ¶¶ 9-17; Zecevic Decl. ¶¶ 9-22; Argudo Decl. ¶¶ 11-24; Gonzalez Decl. ¶¶ 9-22.
[23] Sanay Decl. ¶ 13; Morales Decl. ¶ 13; Zecevic Decl. ¶ 13; Argudo Decl. ¶ 15; Gonzalez Decl. ¶ 13.
[24] Sanay Decl. ¶ 14; Morales Decl. ¶ 14; Zecevic Decl. ¶ 14; Argudo Decl. ¶ 16; Gonzalez Decl. ¶ 14.

to the chefs and kitchen staff and to act as an intermediary between the kitchen and the back-waiters.[25]  In performing thier duties, the dishwashers and expeditors did not interact with customers or provide direct customer service.[26]

"When deciding whether an employee customarily and regularly receives tips, courts must determine whether the employee's job is historically a tipped occupation and whether he has more than '*de minimis*' interaction with customers as a part of his employment." *Schear*, 297 F.R.D. at 131 (citations and quotations omitted).  The Second Circuit has also concluded that certain back-of-the-house restaurant staff, including cooks and dishwashers, cannot participate in valid tip pools under the FLSA because they do not interact with customers. *See, e.g.*, *Shahriar*, 659 F.3d 234, 240. Here, the dishwashers and expediters with whom the Tipped Employees at the Trattoria location were required to share their tips did not have more than "merely occasional or incidental" customer interaction. NYCRR § 146-2.1. Accordingly, Defendants were not entitled to force the Trattoria's Tipped Employees to share their tips with dishwashers and expeditors. The salient fact here are that *all* Tipped Employees at the Trattoria were required to share tips with the dishwashers and expeditors.

## III.    ARGUMENT

### A.   Plaintiffs Have Met The Minimal Burden Necessary For This Court To Grant Conditional Collective Certification

#### (1)   Certifying a Collective Action and Sending Expedited Notice to "Similarly Situated" Employees Fulfills the FLSA's Broad Remedial Purposes

The FLSA contemplates the maintenance of collective actions by similarly situated employees for an employer's violation of the provisions requiring payment of minimum wage and overtime compensation. 29 U.S.C. § 216(b).  Collective actions are favored under the law

---

[25] Sanay Decl. ¶¶ 18-20; Zecevic Decl. ¶¶ 18-20; Argudo Decl. ¶¶ 20-22; Gonzalez Decl. ¶¶ 18-20.
[26] Sanay Decl. ¶ 21; Zecevic Decl. ¶ 21; Argudo Decl. ¶ 23; Gonzalez Decl. ¶ 21.

because they benefit the judicial system by enabling "efficient resolution in one proceeding of common issues of law and fact," and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Pefanis v. Westway Diner, Inc.,* 2010 U.S. Dist. LEXIS 93180, at *7 (S.D.N.Y. 2010). The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments on claims arising from the same events and brought under the same laws. *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007).  To protect proposed collective action members' rights and interests and to promote judicial economy and effective case management, the Court should approve notice to be distributed to all Covered Employees who worked for Defendants at any time during the FLSA Period. *See Hoffmann-La Roche*, 493 U.S. at 170-173 (timely notice is necessary to permit employees the opportunity to "make informed decisions about whether to participate" and assists the trial court in managing the joinder of potential class members).

**(2) The Standard for Conditional Certification and Notice is Lenient**

Courts in this Circuit use a two-step method in assessing whether to certify a collective action. See *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). At the present initial stage, plaintiffs requesting that a court certify a collective action must make "a modest factual showing" to establish that they are similarly situated to other employees of a defendant and that they were all subject to a common policy or practice. *Id.* at 555. As a general rule, courts will certify a collective action and order notice to potential collective members where "the plaintiffs satisfy the minimal burden of showing that the similarly situated requirement is met," *Malloy v. Richard Fleischman & Assocs.*, 2009 U.S. Dist. LEXIS 51790, at *4-5 (S.D.N.Y. 2009). However, this Court has found that where, as here, discovery on conditional certification has

12

been completed, "a modest plus" standard applies. *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016) (citations omitted) (discussing standard to be applied post-discovery) (Furman J.). Under this standard, the Court will look "beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding 'that the body of evidence is necessarily incomplete.'" *Id.* Once a plaintiff meets this standard, the court authorizes the plaintiff to send out notices to potential opt-in plaintiffs who may be similarly situated to the named plaintiff(s) with respect to the FLSA violation alleged. *Id.*; *Myers*, 624 F.3d 537 at 555 (citation omitted).

Although Plaintiffs have made a robust showing that Defendants improperly took advantage of a tip credit and failed to pay the appropriate federally mandated overtime rates, an in-depth discussion of the underlying merits is unnecessary and inappropriate at this time: "[t]he standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008). In other words, "the question for the Court is not 'whether there has been an actual violation of law but rather . . . whether the proposed plaintiffs are 'similarly situated' . . . with respect to the their *allegations* that the law has been violated"); *Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859 (PKC), 2008 U.S. Dist. LEXIS 86577, at *30 (S.D.N.Y. 2008) (emphasis in original) (quotations omitted).

### (3) Plaintiffs Have Made the Modest Factual Showing Required for Conditional Certification

Far exceeding a "modest factual showing," Plaintiffs have submitted Defendants' own testimony as well as testimony from individuals employed at four IM locations that Defendants imposed common payroll policies and that all Tipped Employees were improperly paid pursuant

13

to a tip credit.[27] Plaintiffs have also submitted declarations demonstrating that Defendants improperly included non-service employees in the tip-pool at the Trattoria location.  Thus, Plaintiffs have easily met the lenient standard for certification and notice. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) ("Conditional class certification is appropriate . . . where all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations."). Plaintiffs' allegations establish that Defendants maintain illegal practices that similarly affect all Plaintiffs and FLSA Covered Employees.  Every single Tipped Employee was paid pursuant to a tip credit despite the fact that they were never properly notified of this fact. Accordingly, in 2015, Defendants were not entitled to pay any FLSA Covered Employees pursuant to the tip credit, and these employees have made the "minimal showing" required to have this case certified as a collective action.

### B.  Plaintiffs Satisfy The Requirements For Fed. R. Civ. P. 23 Class Certification

Rule 23 provides that certification is appropriate where, as here, plaintiffs satisfy the four requirements of Rule 23(a) and one of the three prerequisites of Rule 23(b). *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 201-02 (2d Cir. 2008).  "On a motion to certify a class, the court accepts all allegations in the pleadings as true." *Aponte v. Comprehensive Health Mgmt*., 2011 U.S. Dist. LEXIS 60882, at *25 (S.D.N.Y. June 1, 2011) (citation omitted*)*. The Court's task at the Rule 23 stage is "not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common.*'" *In re Initial Pub. Offerings Sec. litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (*quoting Myers*, 624 F.3d at 549) (emphasis in original).

The party seeking class certification bears the burden of satisfying the requirements of

---

[27] *See* Argudo Decl. ¶¶ 1-4 (West 3rd Street, East 60th Street and East 20th Street); Sanay Decl. ¶ 1 (East 20th Street); Morales Decl. ¶ 1 (East 20th Street); Zecevic Decl. ¶ 1 (East 20th Street); Movileanu Decl. ¶ 1 (IM Prime); Gonzalez Decl. ¶ 1 (East 20th Street).

Rule 23 by a preponderance of the evidence. *Teamsters Local 445*, 546 F.3d at 202.

Nevertheless, courts in this Circuit give Rule 23 a "liberal rather than restrictive construction,"

and "adopt a standard of flexibility when they apply it." *Marisol A. v. Giuliani*, 126 F.3d 372,

377 (2d Cir. 1997) (internal quotation marks omitted). Consequently, "it seems beyond

peradventure that the Second Circuit's general preference is for granting rather than denying

class certification." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (citations

and internal quotation marks omitted).

### (1) Plaintiffs Satisfy The Requirements of Rule 23(a)

In order to meet their burden under Rule 23(a), Plaintiffs must show that:

> (1) The class is so numerous that joinder of all members is impracticable;
> (2) There are questions of law or fact common to the class;
> (3) The claims or defenses of the representative parties are typical of the claims or
>     defenses of the class; and
> (4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

#### a.  *Numerosity – Rule 23(a)(1)*

Under Rule 23(a)(1), numerosity is presumed where a putative class has forty or more

members. *Shahriar*, 659 F.3d at 252 (citation omitted).  Here, based on the list of Tipped

Employees who worked at IM since January 26, 2015 that was produced by Defendants pursuant

the Court's May 18, 2018 Order (Dkt. No. 52), there are more than 250 potential Class Members.

(Nussbaum Decl. at ¶¶11-13, Ex. G.) Therefore, numerosity is satisfied.

#### b.  *Commonality/Typicality – Rule 23(a)(2) and (3)*

Although they are separate requirements, the commonality and typicality requirements

tend to overlap and are often considered together. *Myers* v. *The Hertz Corp.*, 2007 U.S. Dist.

LEXIS 53572, at *11 (E.D.N.Y. 2007); *see Selzer v. Bd. of Educ. of City of N.Y.*, 112 F.R.D.

176, 178 (S.D.N.Y. 1986) (The requirements of commonality and typicality "may be considered together, as they 'tend to merge.'"). Thus, if "plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 371 (S.D.N.Y. 2007); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 131 S. Ct. 2541 (2011) ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge."

Rule 23(a)(2)'s commonality requirement is met "if plaintiffs' grievances share a common question of law or fact." *Robinson v. Metro-North Commuter R.R. Co*., 267 F.3d 147, 155 (2d Cir. 2001)); (*citing Dukes*, 131 S.Ct. 2541, 2551 (emphasis in original)). "A question of law or fact is common to the class if the question is 'capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Vargas*, 324 F.R.D. at 324-325 (citations and quotations omitted); *see also Jacob v. Duane Reade, Inc*., 2013 U.S. Dist. LEXIS 38675, at *17 (S.D.N.Y. 2013) (commonality requirement is met where a common question of fact or law is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation.")  A single common question of law or fact will suffice. *Marisol A.*, 126 F.3d at 376.

Typicality "is satisfied when each class member's claim arises from the same course of events, meaning each class member makes similar legal arguments to prove the defendant's liability." *Marisol*, 126 F.3d 372, 376. "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system." *Spicer*, 269 F.R.D. at 337 (*quoting Marisol A.*, 126 F.3d at 377). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality

when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

"In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Spencer v. No Parking Today, Inc.*, 2013 U.S. Dist. LEXIS 36357, *15 (S.D.N.Y. 2013), *report and recommendation adopted by* 2013 U.S. Dist. LEXIS 80587 (S.D.N.Y. 2013) (citation omitted); *see also Iglesias-Mendoza*, 239 F.R.D. at 371 ("Once common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality.").

In terms of typicality, "[a]s long as plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Schear*, 297 F.R.D. at 124 (citations and quotations omitted). *See also Garcia*, 281 F.R.D. at 106  (stating that "[e]ven if some class members' facts are somewhat different than [the named plaintiffs] the claims are similar enough to meet the typicality element," because all class members "were subject to the same general employment scheme" and "their claims are all based on the same course of events and legal theory") (citations omitted); *Iglesias-Mendoza*, 239 F.R.D. at 371 ("As long as plaintiffs assert ... that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality.") (citations omitted).  Accordingly, the typicality requirement is not "highly demanding." *Id.*

Here, Defendants admit that the Tipped Employees were subject to the same payroll practices.  Accordingly, the claims of Plaintiffs and the Rule 23 Class Members arise from a set of common/typical wrongs, namely that (1) Defendants' tip credit was invalidated since they failed to furnish Tipped Employees at all IM locations with appropriate wage notices; (2) Defendants failed provide Tipped Employees at all IM locations with notices and wage

statements that met requirements of the NYLL; and (3) for Tipped Employees at the Trattoria, Defendants required the, to participate in an invalid tip pool.  In that regard, the questions of law and fact common/typical to all members of the Rule 23 Class include:

1) Whether Class Members were subject to the same policies at the restaurants;

2) Whether Defendants illegally took the tip-credit for Tipped Employees' wages, in violation of New York's minimum wage and/or overtime law requirements;

3) Whether Class Members received wage notices and statements that comported with the requirements of the NYLL; and

4) In terms of the Rule 23 Subclass, whether Defendants illegally required Tipped Employees at the Trattoria location to distribute a portion of their tips to non-service employees.

Commonality and typicality of issues with respect to the Rule 23 Class and Subclass is evident.  The harm that the Plaintiffs have suffered in this case is the same harm suffered by each and every Class Member and arises from the same course of events.  Once liability is determined each individual Class Members' damages could be calculated by simply reviewing Defendants' payroll records and human resources records.  Therefore, Plaintiffs have satisfied the commonality and typicality requirements. *See, e.g., Shahriar*, 659 F.3d at 252 (commonality/typicality satisfied where plaintiffs established that restaurant workers were subject to the same policies).

Courts have found commonality and typicality satisfied where a group of restaurant employees were paid the tip credit rate and alleged that Defendants failed to provide them with the specific written notices required by the NYLL. *See, e.g., Hicks*, 2014 U.S. Dist. LEXIS 108434, at *57 (certifying a class of food service workers who were paid a tip credit and alleged that they did not receive the requisite statutory notices); *Marin v. Apple-Metro, Inc*., 2017 U.S. Dist. LEXIS 165568, at *158 (E.D.N.Y. 2017) (report and recommendation); *Mendez v. Pizza on

18

*Stone*, LLC, 2012 U.S. Dist. LEXIS 108605 (S.D.N.Y. Aug. 1, 2012) (same).  Similarly, Courts have found commonality/typicality satisfied when a group of employees allege that Defendants had a class-wide policy of not complying with the WTPA notices requirements.  *See, e.g., Vargas*, 324 F.R.D. at 325; *Sanchez v. N.Y. Kimchi Catering, Corp*., 320 F.R.D. 366, 376 (S.D.N.Y. 2017); *Masoud v. 1285 Bakery, Inc*., 2017 U.S. Dist. LEXIS 14927, at *15-16 (S.D.N.Y. 2017). Finally, commonality/typicaility are satisfied when a group of employees allege that they were required to participate in a tip pool with tip ineligible employees. *See, e.g., Schear*, 297 F.R.D. at 124; *Fonseca*, 2015 U.S. Dist. LEXIS 136427, at *6-11.

### c.   *Adequacy – Rule 23(a)(4)*

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253.  Here, the named Plaintiffs, who are prepared to act as class representatives, have no conflict with any Class Members, and will fairly and adequately protect the interests of the Class.  Additionally, since the Plaintiffs were subject to the same common policies and practices as all other members of the Class, the same legal arguments and strategies will be used to vindicate their claims. *See Spicer*, 269 F.R.D. at 337 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.") (citation omitted).

### d.   *Rule 23(a)'s implied ascertainability requirement*

Although it is "not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." *Hamelin v. Faxton-St.*

*Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y. 2011). Specifically, courts have required that "a class be identifiable before it may be properly certified." *Id*. at 396 (citation omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Schear*, 297 F.R.D. at 125 (quotation omitted). Here, the proposed Class and Subclass are easily identifiable from IM's records: they are comprised of all Tipped Employees who worked at IM locations in Manhattan throughout the Class Period.

### (2) Class Certification Under Rule 23(b)(3) is Appropriate

"In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). "Rule 23(b)(3), the provision that Plaintiffs move under here, is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication." *Schear*, 297 F.R.D. at 125 (quoting Fed. R. Civ. P. 23(b)(3)).

### a. *Common questions of law and fact predominate*

To satisfy predominance under Rule 23(b)(3), plaintiffs must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In Re Visa Check/Mastercard Antitrust Litigation*, 280 F.3d 124, 136 (2d Cir. 2001) (citation and internal quotations omitted)). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Iglesias-Mendoza*, 239 F.R.D. at 372 (internal quotation omitted). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Nasdaq Market-Makers Antitrust Litig*., 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

"Courts in this district have found that the types of individual questions that exist in wage-and-hour cases, such as the hours worked or the exact damages to which each Plaintiff might be entitled, do not defeat the predominance requirement." *Vargas*, 324 F.R.D. at 327. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013) (individualized calculations of damages do not defeat the predominance requirement); *Schear*, 297 F.R.D. at 125 ("damages-related inquiries are 'mechanical' and do 'not threaten to overwhelm the litigation with individual factual determinations.'")(citations and quotations omitted).

Here, the central issues for which Plaintiffs seek class certification is simple: whether defendants provided notices that met the requirements of the NYLL to pay members of proposed class less than the minimum wage; whether Defendants provided notices that met the requirements of the WTPA; and whether employees at the Trattoria had to share tips with ineligible positions.  The Parties will be able to submit generalized proof in support of their arguments as to whether IM's pay policies and notices comply with the NYLL in these respects. Resolution of these issues will predominate over any individualized issues.  In short, all of Defendants' Tipped Employees common claims "can be resolved 'in one stroke' for all members of the class" and thus the predominance requirement of Rule 23(b)(3) is therefore met. *Glazer v. Whirlpool Corp.*, 2013 U.S. App. LEXIS 14519, at *34 (6th Cir. Ohio 2013) (quoting *Dukes*, 131 S. Ct. at 2551); *see also Fonseca*, 2015 U.S. Dist. LEXIS 136427, at *14 ("[T]he issue of whether Defendants violated New York's minimum wage and overtime law requirements by taking the tip credit predominates."); *Vargas*, 324 F.R.D. at  329.

### b.   A class action is superior to other methods of adjudication

Class certification will permit the resolution of significantly more than 250 individual claims in a single forum, at one time, thereby avoiding a multiplicity of repetitive lawsuits. When plaintiffs are "aggrieved by a single policy of the defendant," a class action is ideal as many nearly identical legal and factual issues can be adjudicated in unison. *In re Visa Check*, 280 F.3d at 146.

"It is clear that certification would be preferable to hundreds of separate lawsuits challenging Defendants' same policies and practices." *Vargas*, 324 F.R.D. at 330 (S.D.N.Y. 2018); s*ee also, e.g., Schear*, 297 F.R.D. at 125 ("Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants.")  Here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery. *See e.g., Velez v. Majik Cleaning Serv.*, 2005 U.S. Dist. LEXIS 709, at \*19 (S.D.N.Y. 2005) (ruling that a class action is superior where individual potential class members claims are small and, as a result, there is little incentive for the putative class members to bring individual suits). Without certification, a host of individuals will lose any practical means for obtaining damages stemming from Defendant's illegal conduct.

In addition, opt-out classes are commonly granted where, as here, class members currently work for the defendant and "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." *Trinidad v. Breakaway Courier*, 2007 U.S. Dist. LEXIS 2914, at \*26 (S.D.N.Y. 2007) (quotation omitted); *Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039, at \*53-54 (S.D.N.Y. Sep. 28, 2006).

Since the proposed class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," a class action is the superior method of resolving the Class's claims. *Myers*, 624 F.3d at 547.

### (3) Plaintiffs' Counsel Should be Appointed as Class Counsel

Prior to appointing class counsel, Rule 23(g) directs that the Court to consider:

    (i)    the work counsel has done in identifying or investigating potential claims in the action;

    (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

    (iii)    counsel's knowledge of the applicable law; and

    (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g). *See also Noble v. 93 Univ. Place Corp.*, 224 F.R.D. at 346; *Niemiec v. Ann Bendick Realty*, 2007 U.S. Dist. LEXIS 98840, at *38-39 (E.D.N.Y. 2007), *adopted by*, 2007 U.S. Dist. LEXIS 97531 (E.D.N.Y. 2007).

Plaintiffs have retained Joseph and Kirschenbaum, LLP, a law firm comprised of attorneys who are qualified and experienced in wage and hour class action litigation.  Counsel have extensive experience, and have repeatedly managed large class-action litigations to successful resolution. *See, e.g., Fonseca*, 2015 U.S. Dist. LEXIS 136427, at *18 (finding Joseph and Kirschenbaum LLP "qualified and experienced in class action law and wage and employment litigation"; *Schear*, 297 F.R.D. at 127 (Joseph & Kirschenbaum "has extensive experience litigating plaintiff class actions as well as New York wage and hour claims."). Further, Plaintiffs' counsel has zealously prosecuted this action and identified the potential claims and has sufficient financial resources to represent the class. The Rule 23(g) requirements

are satisfied by the appointment of Plaintiffs' counsel as class counsel. *See generally*, Nussbaum Decl. ¶¶ 14-24.

### (4) The Proposed Notices Satisfies The Requirements Of Rule 23(C)(2)(B)

Attached as Exhibit A to the Declaration of Josef Nussbaum are Plaintiffs' proposed notices which satisfy all the requirements of Rule 23(c)(2)(B).

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court:

(1)    Authorize this case to proceed as a collective action;

(2)    Certify this case as a class action;

(3)    Appoint Plaintiffs' counsel as Class counsel;

(4)    Order Defendants to produce to Plaintiffs a list, in Microsoft Excel format, of all persons employed by Defendants as captains, waiters, bussers, runners, bartenders, and barbacks, from January 26, 2012 to the present, including the employee's name, last known address, alternate address(es) (if any), all known telephone numbers, all known e-mail addresses, social security numbers, dates of employment and job titles, within ten days of the Court's Order; and

(5)    Authorize the mailing of the proposed notice to all FLSA Covered Employees and Class Members.

Dated:  New York, New York
        December 3, 2018

Respectfully submitted,

**JOSEPH & KIRSCHENBAUM LLP**

_____/s/ _Josef Nussbaum_
D. Maimon Kirschenbaum
Josef Nussbaum
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

_Attorneys for Plaintiffs, proposed
collective action members and proposed
Class Members_

25