UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENRY ARGUDO and DIEGO SANAY, on behalf
of themselves and others similarly situated

                    Plaintiffs,

     v.

PAREA GROUP LLC, d/b/a TRATTORIA IL
MULINO, IMNY GS LLC d/b/a IL MULINO
TRIBECA, GFB RESTAURANT CORP. d/b/a IL
MULINO DOWNTOWN, WONDERFUL
RESTAURANT LLC d/b/a IL MULINO
UPTOWN, K.G. IM MANAGEMENT,
LLC, PASTA PERFECT LLC, IM 60 STREET, IL
MULINO USA, IM LLC-I, BRIAN GALLIGAN,
and GERALD KATZOFF,

                    Defendants.

18 Civ. 678 (JMF)


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY  APPROVAL OF CLASS
ACTION SETTLEMENT AND APPROVAL OF PLAN
FOR PROPOSED NOTICE OF SETTLEMENT**


D. Maimon Kirschenbaum
Josef Nussbaum
**JOSEPH & KIRSCHENBAUM LLP**
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs, FLSA Opt-in Plaintiffs,
and F.R.C.P. Rule 23 Class Members*


July 16, 2020

# TABLE OF CONTENTS

I.   INTRODUCTION…………………………………………………………………...……..1

II.  BACKGROUND……………………………………………………….…………………..2

    A. Procedural History........................................................................................................ 2

    B. Discovery ..................................................................................................................... 4

    C. Mediation and Settlement Negotiations....................................................................... 5

III. SUMMARY OF SETTLEMENT TERMS...................................................................... 8

    A. Settlement Fund.......................................................................................................... 8

    B. Class Members and Claimants.................................................................................... 8

    C. Allocation Formula ..................................................................................................... 9

    D. The Release ............................................................................................................... 10

    E. Attorneys' Fees and Costs and Service Awards ....................................................... 11

    F. Settlement Claims Administrator .............................................................................. 11

IV. ARGUMENT……………….…......................................................................................... 11

    A. Preliminary Approval of the Settlement Agreement Is Appropriate............................. 12

        i.    There are no grounds to doubt the fairness of the agreement, which is the product
            of extensive, arm's length negotiations ................................................................. 14

        ii.   The settlement contains no obvious deficiencies................................................... 15

        iii.  The settlement falls within the range of possible approval ................................... 16

V.  THE PROPOSED PLAN OF CLASS NOTICE SHOULD BE APPROVED ...................... 19

VI. CONCLUSION……………….......................................................................................... 21

# **TABLE OF AUTHORITIES**

## **Cases**

*Ahmed v. Morgans Hotel Grp. Mgmt., LLC*, 54 Misc. 3d 1220(A)
(N.Y. Cnty. Feb. 27, 2017)……………………………………………………6, 7

*Ahmed v. Morgan's Hotel Grp. Mgmt., LLC*, 160 A.D.3d 555 (1st Dep't 2018)…………….....6, 7

*Argudo v. Parea Grp. LLC*, No. 18-CV-0678 (JMF),
2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sep. 24, 2019)………………………………...3

*Asque v. S&W Supermarket, Inc*., No. 19-CV-9426 (JLC), 2020 U.S. Dist. LEXIS 103969
(S.D.N.Y. June 15, 2020)………………………………………………….……………18

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Sist. LEXIS 11450
(E.D.N.Y. May 17, 1990)………………………………………………………………17

*Campos v. Goode,* No. 10 CIV. 0224 (DF),
2011 U.S. Dist. LEXIS 22959 (S.D.N.Y. Mar. 4, 2011)……………………………………16

*Clark v. Ecolab Inc*., 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010)……………….....15
…
*Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. 153 (E.D.N.Y. 2009)…………………………12

*Danieli v. IBM,* No. 08 Civ. 3688 (SHS),
2009 U.S. Dist. LEXIS 106938 (S.D.N.Y. Nov. 16, 2009)………………………………13

*deMunecas v. Bold Food, LLC,* 09 Civ. 00440 (DAB),
2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010)………………………………16, 17

*Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974)………………………….......14, 17

*Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231, 246-47 (E.D.N.Y. 2010)……………18

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)………………………………………...19

*Guevoura Fund Ltd. v. Sillerman*, Nos. 15 CV 07192, 18 CV 09784, 2019 U.S. Dist. LEXIS
218116 (S.D.N.Y. Dec. 18, 2019)…………………………………....…………………15

*Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 182 (W.D.N.Y. 2005)…………………………14

*Hamadou v. Hess Corp.*, No. 12-CV-0250 (JLC), 2015 U.S. Dist. LEXIS 13227
(S.D.N.Y. Feb 3, 2015)………………………………………………………...…2

*Hamadou v. Hess Corp.,* No. 12-CV-0250 (JLC), 2015 U.S. Dist. LEXIS 79777
(S.D.N.Y. June 18, 2015)…………………………...……………………………11, 16

*Hart v. RCI Hosp. Holdings, Inc.,* No. 09-CV-3043 (PAE), 2015 U.S. Dist. LEXIS 126934
(S.D.N.Y. Sept. 22, 2015)……………………………………………………….....18

*Hernandez v. Anjost Corp.,* No. 11 Civ. 1531 (AT),
2013 U.S. Dist. LEXIS 116048 (S.D.N.Y. Aug. 14, 2013)…………………………………13

*In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004)……………15

*In re Initial Pub. Offering,* 226 F.R.D. 186, 191 (S.D.N.Y. 2005)…………………………..12, 13

*In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969)………………………………...16

*In re Med. X-Ray Film Antitrust Litig.,* No. CV 93-5904 (CPS),
1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997)………….....................14
…

*In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993)………………20

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.,* 163 F.R.D. 200, 210 (S.D.N.Y. 1995)……………13

*In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980)………………………………...13

*Joel A. v. Guiliani,* 218 F.3d 132, 138-39, 144 (2d Cir. 2000)…………………………………18

*Khait v. Whirlpool Corp.,* No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067
(E.D.N.Y. Jan 20, 2010)……………………………………………………...12, 16, 18

*Marin v. Apple-Metro, Inc.,* No. 12 CV 5274 (ENV) (CLP), 2017 U.S. Dist. LEXIS 165568
(E.D.N.Y. Oct. 4, 2017)…………………………………………………………..…7

*McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009)…………………………...12

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir. 1982)…………………17

*Saylor v. Lindley,* 456 F.2d 896, 904 (2d Cir. 1972)………………………………………………14

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC); 08 Civ. 8531 (PAC); 08 Civ.
9627 (PAC), 2010 U.S. Dist. LEXIS 75362 (S.D.N.Y. June 1, 2010)………….……..…12

*Velez v. Novartis Pharms. Corp.,* 04 Civ. 09194 (CM),
2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010)…………………………………17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005)…………12, 14, 19

*Willix v. Healthfirst, Inc*., 2010 U.S. Dist. LEXIS 139137
  (E.D.N.Y. Nov. 12, 2010)……………………………...……………………..……20

*Wright v. Stern,* 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008)………………….……..…….14

*Zeltser v. Merrill Lynch & Co*., No. 13 Civ. 1531 (FM),
  2014 U.S. Dist. LEXIS 66230 (S.D.N.Y. May 12, 2014)…………………..…….…..14

*Zeltser v. Merrill Lynch & Co*., No. 13 Civ. 1531 (FM),
  2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sep. 23, 2014)……………………………..16

**Statutes, Rules, Regulations and Treatises**

Fair Labor Standards Act……………..………………………………………………...*passim*

Fed. R. Civ. P. Rule 23……………………………………………………………..,,*passim*

Fed. R. Civ. P. 30(b)(6)…………………………………………………………………….4

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3……………………………………………3

N.Y. Lab. L. § 195, 198………………………………………………………....…6, 7

N.Y. Lab. L. § 196-d…………………………………………………………………………..3

Newberg & Alba Conte, *Newberg on Class Actions*, § 11.25, § 11:53
  (4th ed. 2002)……………………………………………………………………13, 19

## I.   INTRODUCTION

Subject to Court approval, Plaintiffs/Class Representatives Henry Argudo and Diego

Sanay (hereinafter "Plaintiffs" or the "Class Representatives"), on behalf of themselves and the

Fed. R. Civ. P. Rule 23 Class, and Defendants IMNY GS LLC d/b/a Il Mulino Tribeca, GFB

Restaurant Corp. d/b/a Il Mulino Downtown, Wonderful Restaurant LLC d/b/a Il Mulino

Uptown, K.G. IM Management, LLC, Pasta Perfect LLC, IM 60 Street, Il Mulino

USA, IM LLC-I, Brian Galligan, and Gerald Katzoff (hereinafter collectively referred to as

"Defendants,"[1] "Il Mulino," or the "Restaurants," and together with Class Representatives, the

"Parties") have settled this wage and hour class action for $2,500,000.  Defendants agree to the

terms of the settlement and do not object to the relief requested herein.[2]

The proposed settlement satisfies all of the criteria for preliminary approval under federal

law.  Accordingly, Class Representatives respectfully request that the Court (1) grant preliminary

approval of the Settlement Agreement and Release (the "Settlement Agreement") as fair,

adequate and reasonable; (2) appoint a Claims Administrator; (3) approve the Notice of Proposed

Class Action Lawsuit Settlement (the "Notice") and the process for dissemination of the Notice;

and (4) schedule a hearing ("Fairness Hearing") at which the Court will consider the Class

Representatives' motion for final approval of the settlement, attorneys' fees and costs, and

enhancement awards.

Preliminary approval of the settlement agreement will allow the Parties to notify class

members of the settlement and of their right to object or opt out.  Preliminary approval does not

---

[1]  For the purposes of the memorandum, the term "Defendants" refers to all Named Defendants in this Action with the exception of Parea Group, LLC with respect to which the Action is stayed. *See* Dkt. No. 77.

[2]  In support of this motion, Plaintiffs submit the declaration of Josef Nussbaum ("Nussbaum Decl.") dated July 16, 2020, attaching thereto as Exhibit A ("Ex. A") a true and correct copy of the Settlement Agreement, as Exhibit B ("Ex. B") a true and correct copy of the proposed Class Notices, and as Exhibit C ("Ex. C") a proposed Order.

require the Court to rule on the ultimate fairness of the settlement, but to make only an "initial evaluation" of the fairness of the proposed settlement and whether there is "probable cause" to submit it to the class members. *Hamadou v. Hess Corp.*, No. 12-CV-0250 (JLC), 2015 U.S. Dist. LEXIS 13227, at *4 (S.D.N.Y. Feb. 3, 2015) (citations and quotations omitted); s*ee also In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (the court need only find "'probable cause' to submit the [settlement] to class members and hold a fullscale hearing as to its fairness").  Here, the Court should permit notice of the settlement to be sent to class members because the settlement falls within the "range of possible settlement approval." *Hamadou,* 2015 U.S. Dist. LEXIS 13227, at *3.

## II.     BACKGROUND

### A.     Procedural History

Plaintiffs and Class Members are current and former tipped food service employees (including servers, runners, bussers and bartenders) who—in the six years prior to the filing of the lawsuit—worked at five Il Mulino restaurants located in New York City. (Nussbaum Decl. ¶ 4.)  On January 26, 2018, Plaintiffs filed this lawsuit against Defendants asserting, *inter alia*, that Il Mulino and its owners/operators Defendants Gerald Katzoff and Brian Galligan violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by: (1) failing to pay employees for all hours they worked; (2) improperly taking a tip credit for the wages they paid to tipped employees, and, as a result, failing to pay tipped employees the minimum wage for all hours worked and the proper overtime premium for hours worked in excess of 40 in a week; and (3) failing to provide tipped employees with the appropriate wage notices and statements required under New York State's Wage Theft Prevention Act (the "WTPA"). (*Id*. ¶ 5.)  Plaintiffs also alleged that Defendants improperly forced employees at the Trattoria Il Mulino location to share their tips with individuals who do not customarily receive tips. (*Id*. ¶ 6.)

The lion's share of the damages in the case centers around Plaintiffs' claim that Defendants were ineligible to apply the FLSA and NYLL tip credit to food service employees' hourly wages because Defendants failed to meet the statutory notice prerequisites, which must be followed in order to pay employees pursuant to a tip credit. *See* 29 U.S.C. § 203(m); N.Y. Comp. Codes R. & Regs. tit. 12 ("NYCRR"), § 146-1.3.  Most of the remaining damages stem from Defendants' failure to comply with the notice requirements of New York's WTPA which could have resulted in penalties of up to $10,000 per Class Member if the Class was successful at trial. (Nussbaum Decl. ¶¶ 7-8.)

In December 2018, Defendants moved for partial summary judgment seeking a ruling that Il Mulino's owner, Gerald Katzoff, was not Plaintiffs' employer for the purposes of the FLSA and NYLL and that he should thus be dismissed as a Defendant in the lawsuit. (*Id*. at ¶ 9.) Contemporaneously with Defendants' motion, Plaintiffs moved to have the case certified as a class action pursuant to Fed. R. Civ. P.  23. (*Id*. at ¶ 10.)  In September 2019, the Court ruled in Plaintiffs' favor on both these motions and certified a class of tipped food-service employees employed at Il Mulino employed between January 26, 2012 and the date of the Order certifying the Class ("Class Members"). *See Argudo v. Parea Grp. LLC*, No. 18-CV-0678 (JMF), 2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sep. 24, 2019).  The Court also certified a subclass of tipped food-service employees employed at the Trattoria Il Mulino location (the "Subclass Members") for the purposes of Plaintiffs' N.Y. Lab. Law § 196-d claim only. *Id.* at 15-16. Finally, the Court appointed Joseph & Kirschenbaum LLP ("J&K" or "Class Counsel") as Class Counsel. *Id*. at 16.

### B.    Discovery

The parties had nearly completed all class-wide discovery by the time this case was resolved. (*Id.* at ¶ 14.)  In discovery, Defendants produced class-wide payroll, clock-in, and tip records for the entire liability period, as well as the Named Plaintiffs' and opt-in Plaintiffs' personnel files and time records.  Defendants also produced wage notification forms—to the extent they existed—that they alleged they had provided Class Members during the relevant statutory period. (*Id.* at ¶ 15.)  Throughout the pre-certification and post-certification discovery periods, Defendants' previous and current counsel engaged Class Counsel in numerous in person, telephonic and email conversations to assist us in gaining a complete and accurate understanding of Defendants' payroll records. (*Id.* at ¶ 16.)

In addition to the payroll records, Plaintiffs took a Fed. R. Civ. P. 30(b)(6) deposition of the corporate Defendants and depositions of the individual Defendants.  At the time the Parties reached a settlement, Plaintiffs were preparing to conduct a second deposition of the corporate Defendants. (*Id.* at ¶ 17.)  Defendants deposed the two Named Plaintiffs and, at the time the case settled, the Parties were in the process of scheduling depositions of an additional eleven opt-in Plaintiffs. (*Id.* at ¶ 18.)  Throughout the litigation, Class Counsel was also in regular contact with the Named Plaintiffs, Opt-in Plaintiffs and Class Members. (*Id.* at ¶ 19.)  After thoroughly scrutinizing the payroll records, considering the extensive deposition testimony and frequent conversations with Class Members, Class Counsel were able to estimate the total potential damages in this case and to evaluate the strengths and weaknesses of the Class's claims. (*Id.* at ¶ 20.)

The case settled shortly before the fact discovery deadline, which was set to occur on July 1, 2020.  If the case had not settled, Plaintiffs were scheduled to file a motion for partial summary judgment on their tip credit and wage notice claims by July 17, 2020. (*Id.* at ¶ 21.)

4

### C.      Mediation and Settlement Negotiations

The Parties first attempted to formally resolve this matter in February 2020 by attending a full-day mediation with Mrs. Ruth Raisfeld, Esq., a well-known and well-respected mediator. (*Id*. at 22.)  In addition to the Named Defendants and their attorneys, several representatives of a financial services company that finances Defendants' companies attended the mediation as well. (*Id*. at ¶ 23.)  At the mediation, Defendants strongly contested almost all of the Class's legal and factual arguments.  Defendants also made significant representations—supported by their lenders' representatives as well as by financial records they provided for Class Counsel to review—that the Restaurants were severely overleveraged, their financial status was strained and thus they would be unable to withstand a judgment in the amount that the Class was seeking. (*Id*. at ¶ 24.)  While the Parties made significant progress towards a settlement at the mediation, they were unable to agree on a figure that would resolve this matter and the mediation concluded without a settlement being reached. (*Id.* at ¶ 25.)

After the mediation, Defendants substituted their attorneys and the Parties continued to engage in hard-fought class-wide discovery.  The Parties also continued to explore the possibility of a resolution. (*Id.* at ¶ 26.)  Significantly, shortly after the mediation, the Covid-19 pandemic struck and Defendants' restaurants have been either completely closed or operating at very limited capacity since March 2020.  Thus, Defendants' already strained financial situation was worsened, as they were severely over-leveraged and now bringing in close to no income to service their debt.  Put simply, Defendants' ability to pay and/or withstand a large judgment became even more precarious. (*Id.* at ¶ 27.)  Nevertheless, the Parties were able to continue to negotiate and, in late May 2020, finally agreed to settle the Class's claims for $2.5 million.  (*Id.* at ¶ 28.)  As part of the settlement, and in order to protect the Class from potential consequences of the Restaurants ultimately closing and/or becoming insolvent, Plaintiffs insisted that most of

the settlement fund would be payable almost immediately. (*Id.* at ¶ 29.)  Over the next several

weeks, the Parties engaged in negotiations over certain terms of the agreement, such as the notice

process and the precise formula to be implemented in distributing the settlement proceeds.  The

parties finally arrived at a consensus on all the terms of the agreement in early July 2020. (*Id.* at

¶ 30.)

The $2.5 million dollar settlement amount is, of course, a compromise figure.  It takes

into account the Class's risks of establishing liability in light of disputes concerning the precise

nature of the tip credit notices Defendants claim to have provided Class Members. (*Id.* at ¶ 31.)

For example, in discovery, Defendants produced employee handbooks for which Class Members

signed an "acknowledgment of receipt" forms and which, at times, set forth that Defendants

intended to take a tip credit.  Defendants would have relied on these handbooks and the

"acknowledgment of receipt" forms to try and establish that, contrary to Class Members'

contentions, employees were properly informed that Defendants were taking a tip credit. (*Id.* at ¶

32.)

In addition, Defendants indicated that they intended to argue that they are entitled to an

affirmative defense under N.Y. Lab. Law § 198(1-b), which, they contend based on New York

decisional law, provides a complete defense to the Class's WTPA wage notice claims and tip

credit wage claims. *See Ahmed v. Morgans Hotel Grp. Mgmt., LLC*, 54 Misc. 3d 1220(A) (N.Y.

Cnty. Feb. 27, 2017); *Ahmed v. Morgan's Hotel Grp. Mgmt., LLC*, 160 A.D.3d 555 (1st Dep't

2018).   Specifically in the *Ahmed* case, the New York County Supreme Court held that the

NYLL 198(1-b) affirmative defense to WTPA violations was also applicable to claims that an

employer was not entitled to take the tip credit against the minimum wage because the employer

provided improper notice of the tip credit. *Ahmed*, 2017 N.Y. Misc. LEXIS 638, at *13-14.  This

ruling was ostensibly based on the similarity between the notice requirements an employer must meet before taking the tip credit, which are contained in the NYDOL's Hospitality Wage Order, and the wage notice requirements of N.Y. Lab. Law § 195(1). *See id*. (Nussbaum Decl. at ¶ 33.)

Plaintiffs here were prepared to argue that the *Ahmed* Courts simply got this issue wrong and that Defendants could not rely on any affirmative defense to their tip credit violation. *See, e.g., Marin v. Apple-Metro, Inc*., No. 12 CV 5274 (ENV) (CLP), 2017 U.S. Dist. LEXIS 165568, *77 (E.D.N.Y. Oct. 4, 2017) ("[S]ince February 27, 2015, in an action brought under Section 198(1-b) to recover statutory damages for failure to provide proper wage notice, an employer may avoid liability by showing that . . . it made 'complete and timely payment of all wages due' to the employee who was not provided notice."). Nevertheless, the *Ahmed* decisions remained the only New York State courts to decide this state law issue and therefore Plaintiffs acknowledged they had some risk in overcoming this (incorrectly decided) precedent. (Nussbaum Decl. at ¶ 34.)

Finally, the settlement amount also took into account Defendants' financial position, especially considering the massive effect that the Covid-19 pandemic continues to inflict on the Restaurants.  Even before the onset of the pandemic, at the mediation, Defendants represented that if Plaintiffs and the Class were able to recover a full judgment against Defendants, it is unlikely the Class would be able to collect due to the size of Class's "best case scenario" damages as compared with Defendants' tumultuous finances.  Of course, since that time, the Restaurants' incomes have only decreased, and they are in an existential crisis in light of Covid-19 interruption and their inability to service their very large debts.  Thus, a judgment against Defendants in this case could have ultimately resulted in Defendants potentially closing their business, a result that would be highly detrimental to the Class, especially Class Members who

continue to be employed by Defendants. (*Id*. at 31.)  Taking these considerations into account, Plaintiffs insisted that Defendants fund most of the settlement payment before the Fairness Hearing ($1,000,000 in August and $500,000 in October) thus protecting the Class from the risks of Defendants' bankruptcy and/or other impediments to payment. (Nussbaum Decl. at ¶ 35.)

In sum, as Class Counsel intends to clarify in greater detail in their motion for final approval, the Class Representatives and Class Counsel believe that the settlement easily falls within the range of reasonableness because it achieves a significant benefit for the Class where failure at trial is possible. (*Id*. at ¶ 36.)

## III.   SUMMARY OF SETTLEMENT TERMS[3]

### A.  Settlement Fund

The Settlement Agreement provides that Defendants shall pay a maximum settlement amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) (the "Settlement Common Fund"). (Nussbaum Decl., Ex. A §§ 1.34, 3.1(A).)  The Settlement Common Fund will be paid in three installments, namely $1,000,000 by August 12, 2020, $500,000 by October 15, 2020 and the remaining balance after the settlement's effective date. (*Id*. at § 3.1(B)(1)-(3))  In other words, $1.5 million of the settlement will be funded prior to the Fairness Hearing.  The Settlement Common Fund includes awards to Class Members, service awards to the Class Representatives, attorneys' fees and costs, and reasonable Claims Administrator's fees.

### B.   Class Members and Claimants

The class includes all Il Mulino employees who worked as tipped, food-service employees during the Relevant Statutory Period ("Class Members"). (*Id*. at § 1.7.)  The "Relevant Statutory Period" refers to the period from January 25, 2012 until the date the Court preliminarily approves the settlement. (*Id*. at §1.32.)  The Subclass includes all Class Members

---

[3] Capitalized terms in this section refer to terms as defined in Section 1 of the Settlement Agreement.

who worked for Defendants at the Trattoria Il Mulino during the Relevant Statutory Period ("Subclass Members") (*Id*. at §1.35.)

Per the Settlement Agreement, within thirty (30) days of date the Settlement Agreement is fully executed (*i.e.*, by August 14, 2020), Defendants will send the Claims Administrator a list, in electronic form, of each Class Member's name, last known address, e-mail address, telephone number, social security number, dates of employment at Il Mulino, total number of hours worked at the tip credit minimum wage during the Relevant Statutory Period, and total amount of tips earned by Subclass Members (the "Class List").  (*Id*. at § 2.6(A).)   Within the later of (a) fourteen (14) days after receiving the Class List, or (b) fourteen (14) days after the Court preliminarily approves the settlement, the Claims Administrator will mail the Notice, Claim Form and IRS W-4 Form to all the Class Members.  (*Id*. at § 2.6(C).)   Only those Class Members who timely return their claim forms within sixty (60) days of the mailing (the "Claimants") will be entitled to a share of the settlement fund.  (*Id*. at §§ 1.5, 2.5(G)-(H).)

### C.    Allocation Formula

Pursuant to the Settlement Agreement, the Net Settlement Fund ("NSF") shall be divided based on three categories of damages, namely: (1) the "Tip Credit Fund," which will account for 70% of the NSF, (2) the "WTPA Notice Fund" which will account for 25% of the NSF, and (3) the "Trattoria Subclass Fund" which will account for the tip disgorgement claim brought on behalf of the Subclass Members and which will account for 5% of the NSF.[4]  (*Id*. at § 3.4(B)(3).) The Tip Credit Fund shall be further divided between Class Members who worked between January 26, 2012 and December 31, 2014 ("Period A") and Class Members who worked between January 1, 2015 to the end of the Relevant Statutory Period ("Period B"). (*Id*. at §§

---

[4]  As defined in § 1.22 of the Settlement Agreement, the "Net Settlement Fund" means the remainder of the Settlement Payment after deductions for Court-approved (1) fees and costs for the Settlement Claims Administrators; (2) attorneys' fees and costs for Class Counsel; and (3) service awards to the Named Plaintiffs.

3.4(B)(3)(a)(i)-(ii).)  This is because Defendants only have access to payroll records from 2015 and onwards and thus Class Members who worked for Defendants during Period A (*i.e.*, prior to 2015) will divide the their portion of the Tip Credit Fund on the basis of days that they were employed by Defendants.  Conversely, Class Members who were employed by Defendants at any time after January 1, 2015 will have their portion of the Tip Credit Fund computed based on the amount of hours each Class Member worked for Defendants at the tip credit minimum wage during Period B. (Nussbaum Decl. at ¶ 39.)

The WTPA Notice Fund will be calculated based on the amount time each Class Member worked for Defendants and the Trattoria Subclass Fund will be calculated based on the amounts of tips each Subclass Member earned while working at the Trattoria location during the Relevant Statutory Period. (Ex. A at § 3.4(B)(3)(b).)  No person eligible for payment under the Agreement will receive less than $50.00. (*Id*. at § 3.4(B)(2).)

The Parties agreed that the settlement will be effective 35 days after the Court enters an Order finally approving the settlement. (*Id*. at §§ 1.13.)  All settlement checks issued by the Claims Administrator will be valid for 130 days from the date they are mailed and the individual settlement amounts will be subject to tax withholding and/or reporting. (*Id*. at §§ 3.4(G), 3.5.)

### D.    The Release

In return for the above consideration, all NYLL Class Members who do not opt out of the NYLL Class will release all wage and hour claims under the NYLL, and all Class Members who endorse their settlement checks  sign and return a Claim Form and IRS W-4 Form will also release all FLSA claims against Defendants.  The Settlement Agreement does not release the FLSA claims of any Class Members who do not endorse their settlement checks.  (*Id*. at §§ 4.1(A), 4.1(B).)

### E.      Attorneys' Fees and Costs and Service Awards

J&K will apply for a percentage of the Settlement Payment as attorneys' fees. (*Id*. at §

3.2.)  The Court need not rule on fees and costs now.  J&K will file a formal motion for approval

of fees along with their motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h).

In addition to their individualized awards, the Class Representatives, who actively

participated in this lawsuit, were deposed and spent many hours working with J&K, will apply

for an additional payment in recognition of the services they rendered on behalf of the Class.

Plaintiffs will make this application simultaneously with their motion for final approval of the

Settlement Agreement**.** (*Id*. at § 3.3(A).)  Such service awards are common in class action cases

and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution

of the litigation, the risks incurred by becoming and continuing as a litigant, and any other

burdens sustained by the plaintiff[s]." *Hamadou v. Hess Corp*., 2015 U.S. Dist. LEXIS 79777, at

*10-11 (S.D.N.Y. June 18, 2015) (citation omitted).  Both the application for attorneys' fees and

the application for service awards are separate from approval of the Settlement Agreement, and

will be fully briefed prior to final approval.  Thus, the Court need not decide those issues now.

### F.      Settlement Claims Administrator

The Parties have preliminarily designated Rust Consulting as the proposed Settlement

Claims Administrator. (*Id*. at § 1.6.)  The Settlement Claims Administrator's reasonable fees and

costs will be paid from the Qualified Settlement Fund. (*Id*.)  Rust Consulting estimates that their

claims administration fees will not be in excess of $15,000.00. (Nussbaum Decl. at ¶ 21.)

## IV.   ARGUMENT

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on

a class basis.  Judicial proceedings under Fed. R. Civ. P. 23 ("Rule 23") have established a

defined procedure and specific criteria for settlement approval in class action settlements. There

are three necessary steps:

(1) Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

(2) Dissemination of mailed and/or published notice of settlement to all affected class members; and

(3) A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067 at *4

(E.D.N.Y. Jan. 20, 2010); *In re Initial Pub. Offering,* 226 F.R.D 186, 191 (S.D.N.Y. 2005).

These procedures safeguard class members' procedural due process rights and enable the court to

fulfill its role as the guardian of class interests. *Torres v. Gristede's Operating Corp.*, No. 04

Civ. 3316 (PAC); 08 Civ. 8531 (PAC); 08 Civ. 9627 (PAC), 2010 U.S. Dist. LEXIS 75362, at

*9-10 (S.D.N.Y. June 1, 2010). With this motion, Class Representatives request that the Court

take the first step in the settlement approval process by granting preliminary approval of the

Settlement Agreement, approving the Notice, and authorizing distribution of the Notice.

### A.  Preliminary Approval of the Settlement Agreement Is Appropriate

There is a strong preference in the law for the resolution of class action litigation through

settlement. *See McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009); *Wal-Mart*

*Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial

policy in favor of settlements, particularly in the class action context"); *Cohen v. J.P. Morgan*

*Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009) ("'The compromise of complex litigation is

encouraged by the courts and favored by public policy.'") (citations omitted).

Preliminary approval is the first step in the settlement process. It allows notice to issue to

the class and for Class Members to object or opt out of the settlement. After the notice period,

the Court will be able to evaluate the settlement with the benefit of the Class Members' input at a fairness hearing.  It is the fairness hearing that affords class members "an opportunity to present their views of the proposed settlement."  *In re Initial Public Offering,* 226 F.R.D. at 191. Accordingly, a district court reserves its ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (noting that the court can better evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the Class Members.").

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties. *Hernandez v. Anjost Corp.*, 2013 U.S. Dist. LEXIS 116048, at *4 (S.D.N.Y. 2013); Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), § 11.25 (4th ed. 2002).  The court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n*, 627 F.2d at 634; *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).  *See also Danieli v. IBM*, No. 08 Civ. 3688 (SHS), 2009 U.S. Dist. LEXIS 106938, at *12 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted")

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Khait*, 2010 U.S. Dist. LEXIS 4067 at *13 (same); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same).  "Consequently, when evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement 'into a trial or a rehearsal of the trial.'" *Id.* at 343-44 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)).  *See also Saylor v. Lindley,* 456 F.2d 896, 904 (2d Cir. 1972) ("[S]ince the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits.") (internal citations omitted).  Finally, "[i]n exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 66230 at *3 (S.D.N.Y. May 12, 2014).

> **i.    There are no grounds to doubt the fairness of the agreement, which is the product of extensive, arm's length negotiations**

The first consideration in the preliminary-approval analysis is whether "the settlement is the result of serious, informed and non-collusive negotiations." *In re Med. X-Ray Film Antitrust Litig.,* No. CV 93-5904 (CPS), 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997).

The proposed settlement here is the product of extensive negotiations with the Parties reaching an agreement after attending a mediation with an experienced and reputable mediator. As with the multiple motions to compel filed by Plaintiffs and the intense discovery disputes the Parties engaged in and with which the Court is familiar, negotiations were at all times hard-fought and at arm's length, and have produced a result that experienced counsel believe to be in the best interests of the Class. *See Guevoura Fund Ltd. v. Sillerman*, Nos. 15 CV 07192, 18 CV 09784, 2019 U.S. Dist. LEXIS 218116, at *18 (S.D.N.Y. Dec. 18, 2019) ("The active involvement of experienced and independent mediators in the negotiation of the Settlement is strong evidence of the absence of any collusion and further supports the presumption of fairness."); *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, *17 (S.D.N.Y. May 11, 2010) (where the settlement was achieved through experienced counsels' arm's-length negotiations, then, "[a]bsent fraud or collusion," "'[c]ourt[s] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'") (citation omitted); *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("In addition to this presumption of fairness, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations omitted).

   ii.    **The settlement contains no obvious deficiencies**

The proposed settlement has no obvious deficiencies. The settlement provides for only modest service awards to the Class Representatives who have been instrumental in facilitating a resolution of this matter. These individuals expended significant time participating in discovery, attending depositions and communicating with counsel. Service awards for time, effort, risk, and service do not improperly grant preferential treatment to a class representative. Rather, "[s]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by

becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]."

*Zeltser v. Merrill Lynch & Co*., No. 13 Civ. 1531 (FM), 2014 U.S. Dist. LEXIS 135635, *25

(S.D.N.Y. Sep. 23, 2014) (citation omitted) (approving service awards totaling $57,500 to nine

plaintiffs in a wage and hour class action).

Finally, the settlement does not mandate excessive compensation for Class Counsel, who

will apply for an award of attorneys' fees, not to exceed one-third of the settlement fund, and

reimbursement of expenses.  This is well "within the range of reasonable attorney fees awarded

in the Second Circuit."  *deMunecas v. Bold Food, LLC*, 09 Civ. 00440 (DAB), 2010 U.S. Dist.

LEXIS 87644, at *22-23 (S.D.N.Y. Aug. 23, 2010); *Hamadou*, 2015 U.S. Dist. LEXIS 79777, at

*10 ("Class Counsel's request for 33.3% of the fund is reasonable and consistent with the norms

of class litigation in this Circuit.").

> In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL.

*Khait,* 2010 U.S. Dist. LEXIS 4067 at *22-23 (internal citations omitted).

### iii.   The settlement falls within the range of possible approval

As explained above, the Settlement Agreement was reached only after full pre-class

discovery, a class certification motion, a summary judgment motion, protracted arms' length

negotiations, including a mediation with an experienced wage and hour law mediator.  The

Parties and their counsel fully considered the advantages and disadvantages of continued

litigation.  Class Counsel believe that this settlement achieves all of the objectives of the

litigation, namely a substantial monetary settlement for Class Members.

Class Counsel, who have a great deal of experience in the prosecution and resolution of wage and hour class actions, have carefully evaluated the merits of this case and the proposed settlement. Even if the matter were to proceed to trial, Class Counsel acknowledge that the apparent strength of the claims in this case is no guarantee against a complete or partial defense verdict. "Litigation inherently involves risks." *deMunecas*, 2010 U.S. Dist. LEXIS 87644 at *14 (citation omitted). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *Campos v. Goode,* No. 10 CIV. 0224 (DF), 2011 U.S. Dist. LEXIS 22959 at *13 (S.D.N.Y. Mar. 4, 2011) (same).

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount in the Agreement is more than reasonable. *See Velez v. Novartis Pharms. Corp.*, 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *40-41 (S.D.N.Y. Nov. 30, 2010) ("[C]ourts often approve class settlements even where the benefits represent 'only a fraction of the potential recovery.'"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.") (collecting cases); *cf. Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Khait*, 2010 U.S. Dist. LEXIS 4067, at *18 (quoting *Frank*, 228 F.R.D. at 186).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Khait*, 2010 U.S. Dist. LEXIS 4067, at *18-19.  "[A] 'settlement agreement achieved through good-faith, non-collusive negotiation does not have to be perfect, just reasonable, adequate and fair.'" *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 246-47 (E.D.N.Y. 2010) (quoting *Joel A. v. Guiliani*, 218 F.3d 132, 144 (2d Cir. 2000)).  Here, given the New York State courts' decisions in the *Ahmed* cases (*see supra* pgs. 6-7) and the possibility that this Court would follow the precedent set there, Plaintiffs faced the real risk of not recovering anything on their largest claims in the case.  Furthermore, even if a judgment were obtained against Defendants at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed Settlement.  This especially true considering that Defendants NYC restaurants are still not fully open for business, and a large a wage and hour judgment could very well be the straw that breaks their backs and puts them out of business to the detriment of the Class Members. *See, e.g., Asque v. S&W Supermarket, Inc.*, No. 19-CV-9426 (JLC), 2020 U.S. Dist. LEXIS 103969, at *1-2 (S.D.N.Y. June 15, 2020) (finding an FLSA settlement fair where, among other factors "plaintiffs have expressed serious concerns about collectability" given "defendants' financial situation during the COVID-19 pandemic"); *see also Hart v. RCI Hosp. Holdings, Inc.*, No. 09-CV-3043 (PAE), 2015 U.S. Dist. LEXIS 126934, 2015 WL 5577713, at *10 (S.D.N.Y. Sept. 22, 2015) (significant "risk that plaintiffs would not be able to collect, or fully collect, on a judgment" supported approval of settlement agreement, which "guarantee[d]

recovery from the other two defendants in the event that [one] prove[d] unable to pay the entire settlement amount"). Thus, if this settlement is not approved, it is unlikely that a larger class-wide settlement could be reached in the future. For the foregoing reasons, the Court should grant preliminary approval of the Settlement Agreement and direct that notice of it be given to the Class.

## V.   THE PROPOSED PLAN OF CLASS NOTICE SHOULD BE APPROVED

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.23(c)(2)(B). *See also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175-76 (1974) ("[E]ach class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

Rule 23(e)(B) similarly states, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores,* 396 F.3d at 113 (internal citations omitted). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* at 114 (internal citations omitted). Notice is "adequate if it may be understood by the average class member." *Newberg* § 11:53.

Here, the Claims Administrator will disseminate the Notice to all Class Members via first class mail at their last known addresses as maintained by Defendants, as well as via e-mail and text message to the extent Defendants have that information.  For any Notice returned as undeliverable, the Claims Administrator will attempt a skip trace using the computer databases available and the information provided by Defendants. (Ex. A at § 2.6.)  Those individuals who are located using the skip trace will be sent an additional copy of the Notice.  Thus, the proposed methods of notice comport with Rule 23 and the requirements of due process.

As for the content of the Notice, Rule 23(c)(2)(B) provides:

The notice [to a rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues, or defenses,
- that a class member may enter an appearance through counsel if the member so desires,
- that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice comports with the rule in all respects.  It describes the terms of the settlement, including the proposed allocation of attorneys' fees and service awards to the named Plaintiffs, provides specific information regarding the date, time, and place of the final approval hearing, discloses Class Members' right to exclude themselves from the settlement or object to any of its terms, and specifies the deadline and procedure for doing so, and warns of the binding effects of the settlement on those persons who remain in the Class.  *See, e.g., Willix v. Healthfirst, Inc*., 2010 U.S. Dist. LEXIS 139137, *9 (E.D.N.Y. Nov. 12, 2010) (approving notice where it "adequately puts Rule 23 Class Members on notice of the proposed settlement"); *In re Michael*

*Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). (*See also* Ex. B.)  Therefore, in granting preliminary settlement approval, the Court should also approve the Parties' proposed form and method of giving notice to the Class.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for preliminary approval of the proposed Settlement Agreement, approve the Notice and Claim Form and plan for dissemination of same, and enter the proposed Order setting a Fairness Hearing no earlier than 135 days from the date of preliminary approval.


Dated:  July 16, 2020                          Respectfully submitted,

**JOSEPH & KIRSCHENBAUM LLP**

/s/ *Josef Nussbaum*
D. Maimon Kirschenbaum
Josef Nussbaum
32 Broadway, Suite #601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs and
the FRCP Rule 23 Class*