

| | |
|---|---|
| Jordan D. Weiss<br>jweiss@goodwinlaw.com | Goodwin Procter LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br><br>goodwinlaw.com<br>+1 212 813 8800 |

January 14, 2021

**VIA E-MAIL AND ECF**

Honorable Jesse M. Furman
United States District Judge
40 Foley Square
New York, NY 10007

Re:  *Argudo, et al. v. Parea Group Ltd. et al*, 18-cv-0678 (JMF)

Dear Judge Furman:

As noted in notices of appearances filed contemporaneously herewith, this firm now represents Defendants Pasta Perfect, LLC and IM 60th Street, LLC (the "Acquired Parties"), as well as Benefit Street Partners ("BSP")[1] which is the secured lender to various companies that are Debtors[2] in chapter 11 bankruptcy cases pending in the U.S. Bankruptcy Court for the Southern District of New York (Case No. 20-11723 (MG)) (the "Bankruptcy Case").  As explained further below, recently, as a result of a Dec. 24, 2020 bankruptcy sale,[3] in exchange for its loans to the Debtors, BSP (and with its relevant designees, the "Acquirer") acquired equity interests with respect to, and certain companies with management rights over, the Acquired Parties.

We write because we understand that the Acquired Parties' counsel of record in this matter, the law firm of Ellenoff Grossman & Schole LLP ("EGS"), by Ms. Amanda Fugazy, has sought to

---

[1] Specifically, BSP Agency LLC, Providence Debt Fund III, L.P., Benefit Street Partners SMA LM L.P., Providence Debt Fund III LP, BSP IM Investments Master LP., and Benefit Street Partners SMA-C L.P.

[2] The Debtors are K.G. IM, LLC; Il Mulino USA, LLC; IM LLC – III; IMNYLV, LLC; IM NY, Florida, LLC; IM NY, Puerto Rico, LLC; IMNY AC, LLC; IM Products, LLC; IM Long Island Restaurant Group, LLC; IM Long Island, LLC; IM Franchise, LLC; IM 60th Street Holdings, LLC; IM Broadway, LLC; IMNY Hamptons, LLC; and IM Payroll, LLC.  *In re K.G. IM, LLC, et al.*, No. 20-11723 (MG) (Bankr. S.D.N.Y.).

[3] *See Order (I) Approving Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing Sale of Substantially All of the Debtors' Assts Free and Clear of Liens, Claims, Interest, and Encumbrances, (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (IV) Granting Related Relief*, In re K.G. IM, LLC et al., No. 20-11723 (MG) (Bankr. S.D.N.Y. Dec. 28, 2020)  ECF No. 393 (the "Sale Order").  *See also Notice of Closing of Sale and Executed Asset Purchase Agreement*, In re K.G. IM, LLC et al., No. 20-11723 (MG) (Bankr. S.D.N.Y. Dec. 28, 2020) ECF No. 396 ("Notice of Sale Closing").

ACTIVE/106262121.7

withdraw her representation of the Acquired Parties[4]—but to continue to represent the other Defendants, including her originating client, Gerald Katzoff—and because the Plaintiffs have made clear that they wish to move forward with the fairness hearing and approval of the Settlement Agreement.  Thereafter, Plaintiffs intend to seek, among other things, immediate execution of a judgment in this matter.

Although we are just stepping into this representation of the Acquired Parties, it is clear to us that there has been a lack of candor on the part of the parties to date regarding the Settlement Agreement, the parties' understandings regarding the financing of the Settlement Agreement, and financial condition of the Acquired Parties (and perhaps all) defendants. We respectfully submit this letter in the contrasting sprit of candor, in order to lay bare the facts, and present to the Court in the most transparent way possible, the likely outcome of these proceedings.

**The Settlement Agreement**

The Settlement Agreement was filed with the Court on July 16, 2020.[5]  At the time the Settlement Agreement was entered into, the Acquired Parties were controlled by K.G. IM, LLC ("KGIM") (an entity co-managed by Mr. Katzoff and Mr. Galligan) and were each owned in part by other entities owned and controlled by Mr. Katzoff and Mr. Galligan (the "JV Owners"), and in part by other persons. Indeed, BSP, as lender, *was adverse* to KGIM and the JV Owners. Mr. Katoff caused KGIM and certain related parties (including IL Mulino USA one of the defendants herein) to file the Bankruptcy Case on July 28, 2020.  That the Acquired Parties, KGIM and the JV Owners were in dire financial straits when the Settlement Agreement was executed was no secret.  Indeed, BSP had already sent notices of default and acceleration in early June 2020.  Similarly, we understand that at the time the Settlement Agreement was executed the other company defendants also lacked the ability to fund the settlement amount which, by virtue of their then-current ownership and/or management of the corporate Defendants, all Defendants should have known.  Indeed, as acknowledged by Plaintiffs, the Defendant restaurants were suffering financially at the time the Settlement Agreement was executed.[6] Accordingly, Plaintiffs insisted the settlement be funded in August and October of 2020 to "protect[] the Class from the risks of Defendants' bankruptcy and/or other impediments to payment."[7]  Nevertheless, the Settlement Agreement, which was negotiated by Ms. Fugazy, purportedly on behalf of all Defendants, makes each Defendant jointly

---

[4] EGS has also sought to withdraw from representation of Defendants Wonderful Restaurant, LLC and Mr. Brian Galligan.  Goodwin is not representing those Defendants and therefore takes no position with respect to whether EGS withdraws its representation as to Wonderful Restaurant and Mr. Galligan.

[5] *Declaration of Josef Nussbaum*, ECF No. 219. *See also Motion to Approve Class Action Settlement*, ECF No. 217; *Memorandum of Law In Support of Motion to Approve Class Action Settlement*, ECF No. 218.

[6] Declaration of Josef Nussbaum ¶¶ 24, 27 (ECF No. 219).

[7] Declaration of Josef Nussbaum ¶¶ 29, 35 (ECF No. 219).

and severally liable for the entire settlement amount.[8]  The Court preliminarily approved the Settlement on July 23, 2020 and set the fairness hearing for December 17, 2020.[9]

Against the backdrop of the corporate Defendants' financial condition, the entire structure of the Settlement Agreement, and the commitments made by the Defendants therein, make no sense *ab initio*.  The only way the Settlement Agreement could ever have been performed is if Mr. Katzoff planned to fund the entire settlement amount himself.  One would assume that this was a matter that Ms. Fugazy and the other Defendants discussed at length before entering into the Settlement Agreement.

Since the Settlement Agreement was executed, we understand that no Defendant has funded any portion of the settlement amount as promised.

**The December 3 Letter and Subsequent Bankruptcy Sale**

On December 3, 2020, EGS wrote a joint letter (the "December 3 Letter") to this Court with Plaintiffs requesting an extension of time to seek final approval of the settlement because "of an imminent asset sale in the bankruptcy case related to this matter."  Moreover, the December 3 Letter represents that "[t]he Non-Debtor Defendants will fund the settlement in this case on or before January 4, 2021."

Today, as a practical matter, the Acquired Parties have no direct insight into why both Plaintiffs and Defendants felt comfortable representing to the Court that Non-Debtor Defendants would fund the settlement in this case on or before January 4, 2021. Again, unless Mr. Katzoff intended to pay the entire settlement amount himself, all Defendants knew that the Acquired Parties and the other corporate Defendants lacked the financial ability to fund the settlement amount.[10]

On December 24, 2020, the Acquirer acquired substantially all of the assets of the Debtors through a court-approved sale pursuant to Bankruptcy Code section 363 (the "Sale").[11]  Through the Sale, the Acquirer acquired (among other assets):

---

[8] Under the Settlement Agreement, Defendants Pasta Perfect, LLC, Il Mulino USA and IM LLC-I are "not required to contribute to the payment to the Settlement Common Fund to the extent the payment exceeds One Million Five Hundred Thousand Dollars and Zero Cents ($1,500,00.00). Settlement Agreement § 3.1(A). Defendant IM 60th Street is not subject to a similar cap on liability.

[9] ECF No. 220.

[10] To be clear, neither Defendants nor counsel could have thought that as a result of the pending sale in the Bankruptcy Case, Acquired Parties would have been funded with sale proceeds.  The transaction contemplated by the Stalking Horse Asset Purchase Agreement in the bankruptcy proceeding provided for a credit bid equal to $18 million on account of its secured debt plus a nominal amount of cash consideration for unsecured creditors and contract counterparties.  *See* APA § 2.5(i) (annexed to Notice of Sale Closing as Exhibit B).  Although BSP's initial credit bid of $18 million was subject to higher and better offers through an auction process, its total secured debt outstanding exceeded $36 million.  In other words, neither BSP's credit bid, nor any other cash bid in an amount less than BSP's secured claims, would have resulted in a cash infusion to the Acquired Parties that would have enabled them to satisfy obligations under the Settlement Agreement.

[11] *See* Notice of Sale Closing.

- All rights of KGIM as manager of Pasta Perfect, LLC and IM 60th Street, LLC
- A 70% equity interest in Defendant IM 60th Street, LLC, which has an equity interest in Wonderful Restaurant, LLC[12]
- A 50% equity interest in Defendant Pasta Perfect, LLC
- An indirect 55% equity interest in Defendant IMNY GS, LLC[13]

**Moving Forward**

To be certain, the Acquired Parties understand they are subject to the terms of this Court's previously-entered orders. Nevertheless, as a practical matter, as noted above, Acquired Parties do not have the financial wherewithal to fund any meaningful portion of the settlement amount. In fact, should the fairness hearing go forward and judgment be entered against the Acquired Parties based on the terms of the Settlement Agreement, Acquired Parties may be required to seek bankruptcy protection in order to preserve the value of their going concern.

Notwithstanding the foregoing, the Acquired Parties believe they can make a capital call of $500,000.00, which if funded by their members, would enable them to settle the Plaintiffs' claims against the Acquired Parties, *provided that* such settlement payment releases the Acquired Parties from any liability to Plaintiffs and the remaining Defendants for claims arising out of or relating to this litigation, including a contribution bar. The Acquired Parties believe this alternative is superior to any reasonably available alternative, as it will enable the Plaintiffs to obtain a meaningful recovery more quickly, rather than facing the uncertainty of collecting on a judgment including in bankruptcy proceedings for the Acquired Parties.

\* \* \*

We imagine that there will be some justified frustration on all sides regarding the reality of the situation. The Acquired Parties share that frustration. As a consequence of the Defendants' prior interested dealings effectuated when they were under the control of Mr. Katzoff, the Acquired Parties find themselves in an untenable situation. Above all else, and their circumstances notwithstanding, the Acquired Parties prioritize full faith and candor in its communications with the Court.

As Goodwin has now formally appeared on behalf of the Acquired Parties, it consents to the *Motion to Withdraw as Counsel* filed by the EGS firm with respect to the Acquired Parties only, while reserving all other rights as to her and her firm.

Respectfully submitted,

*/s/ Jordan D. Weiss*

---

[12] However, whether any management rights of defendant Wonderful Restaurant, LLC were acquired as part of the Sale remains unclear. BSP is currently investigating this issue.

[13] The equity interest in IMNY GS, LLC was acquired through Debtor Il Mulino USA, LLC's 100% ownership of Il Mulino Joint Ventures, LLC, which owns 55% of IMNY GS, LLC.

4

Jordan D. Weiss
*Counsel to Pasta Perfect, LLC and IM 60th Street, LLC*

CC: All counsel of record (via ECF)

ACTIVE/106262121.7