UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HENRY ARGUDO and DIEGO SANAY, on behalf
of themselves and others similarly situated

                    Plaintiffs,

         v.                                                    18 Civ. 678 (JMF)

PAREA GROUP LLC, d/b/a TRATTORIA IL
MULINO, IMNY GS LLC d/b/a IL MULINO
TRIBECA, GFB RESTAURANT CORP. d/b/a IL
MULINO DOWNTOWN, WONDERFUL
RESTAURANT LLC d/b/a IL MULINO
UPTOWN, K.G. IM MANAGEMENT,
LLC, PASTA PERFECT LLC, IM 60 STREET, IL
MULINO USA, IM LLC-I, BRIAN GALLIGAN,
and GERALD KATZOFF,

                    Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' (UNOPPOSED) MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

D. Maimon Kirschenbaum
Josef Nussbaum
**JOSEPH & KIRSCHENBAUM LLP**
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs, FLSA Opt-in Plaintiffs,*
*and F.R.C.P. Rule 23 Class Members*

January 21, 2021

# TABLE OF CONTENTS

I.   OVERVIEW AND INTRODUCTION ............................................................................. 1

II.  BACKGROUND ........................................................................................................... 3

   A.   Procedural History ............................................................................................. 3
   B.   Defendants' Failure to Produce Complete and Accurate Class Lists ................ 4
   C.   Discovery ............................................................................................................ 5
   D.   Mediation and Settlement Negotiations ............................................................. 6
   E.   Activity After the Court Preliminarily Approved the Settlement .................... 10

III. SUMMARY OF SETTLEMENT TERMS ................................................................. 11

   A.   Settlement Fund ............................................................................................... 11
   B.   Class Members and Claimants .......................................................................... 11
   C.   Allocation Formula ........................................................................................... 12
   D.   The Release ....................................................................................................... 13
   E.   Class Members' Response To Settlement ........................................................ 13

IV.  ARGUMENT ............................................................................................................. 14

   A.   The Proposed Settlement Should Be Approved ............................................... 14
   B.   The Proposed Settlement is Fair, Reasonable, and Adequate and Should be
        Approved .......................................................................................................... 14
     i.   Procedural fairness .................................................................................... 15
     ii.  Substantive fairness ................................................................................... 16
        1.   Complexity, expense, and likely duration of the litigation ...................... 16
        2.   Reaction of the class to the settlement ..................................................... 17
        3.   Stage of the proceedings and the amount of discovery completed ........... 18
        4.   Risks of establishing liability ................................................................... 18
        5.   Risks of establishing damages .................................................................. 19
        6.   Risks of maintaining the class action through trial .................................. 19
        7.   Ability of defendants to withstand a greater judgment ............................. 20
        8.   Range of reasonableness of the settlement in light of best possible recovery and
            attendant risks of litigation ...................................................................... 21
     iii. The Notice to the Class Meets the Requirements of Rule 23 ...................... 23
   C.   Approval of the Settlement of the Opt-In Plaintiffs' FLSA Claims is also
        Appropriate ....................................................................................................... 23
   D.   The Class Will Seek Immediate Enforcement of the Judgment ........................ 24

V.   CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Ahmed v. Morgan's Hotel Grp. Mgmt., LLC*, 160 A.D.3d 555 (1st Dep't 2018).................... 8, 19

*Ahmed v. Morgans Hotel Grp. Mgmt., LLC*, 54 Misc. 3d 1220(A) (N.Y. Cnty. Feb. 27, 2017).... 8

*Allstar Mktg. Grp., LLC v. 158*, 2019 U.S. Dist. LEXIS 141913, at *11 n.6 (S.D.N.Y. Aug. 20, 2019) ................................................................................................................................ 25

*Allstar Mktg. Grp., LLC v. 178623*, 2020 U.S. Dist. LEXIS 181086, at *18 (S.D.N.Y. Sep. 30, 2020) ................................................................................................................................ 25

*Argudo v. Parea Grp. LLC*, No. 18-CV-0678 (JMF), 2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sep. 24, 2019) ....................................................................................................................... 4

*Artmann v. Center Garage, Inc.,* 2012 WL 5332355, at *3 (N.D. Ind. 2012)............................. 24

*Capsolas v. Pasta Res., Inc.*, 2012 U.S. Dist. LEXIS 144651, *17 (S.D.N.Y. 2012) ........... 21, 23

*Carrasco v. Endurance U.S. Holdings Corp.*, 2020 U.S. Dist. LEXIS 46905 (S.D.N.Y. Mar. 17, 2020) ................................................................................................................................ 12

*Chambery v. Tuxedo Junction Inc.*, No. 12 Civ. 06539, 2014 U.S. Dist. LEXIS 101939, at *16 (W.D.N.Y. July 25, 2014)........................................................................................................ 18

*D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008)................................................................................................... 20, 21

*D'Amato v. Watman*, 236 F.3d 78, 85 (2d Cir. 2001)................................................................ 14

*Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513, at *11 (E.D.N.Y. Oct. 9, 2018) ................................................................................ 15

*Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010) ........................ 15

*Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *17 (S.D.N.Y. Jan. 28, 2014)........... 20

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005)................................... 16

*Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991)................................................................................ 20

*Great Am. Ins. Co. v. Gen. Contractors & Constr. Mgmt.*, 2008 WL 2940665, *1 (S.D. Fla. 2008) ................................................................................................................................ 24

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at \*13 (S.D.N.Y. Oct. 19, 2005) ................................................................................................. 15

*Hussain v. Burton & Doyle of Great Neck LLC*, No. 14-cv-5924 (SIL), Dkt. No. 154 ................ 9

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997) ............................ 19

*In re Sony SXRD Rear Projection Television Class Action Litig.*, 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, at \*18 (S.D.N.Y. 2008) ................................................................................. 17

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) ................................ 14, 18

*Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000) ............................................................ 23

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002) .......... 16, 19, 21

*Marin v. Apple-Metro, Inc.*, No. 12-cv-5274 (ENV) (CLP), 2020 U.S. Dist. LEXIS 195258 (E.D.N.Y. Oct. 7, 2020) ............................................................................................... 8, 19

*Morales v. Rochdale Vill.*, 2019 U.S. Dist. LEXIS 232122, at \*4 (E.D.N.Y. Dec. 6, 2019) ....... 12

*See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 124 (S.D.N.Y. 2009) ....... 22

*Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, 01 Civ. 11814 (MP), 2004 U.S. Dist. LEXIS 8608, at \*16 (S.D.N.Y. 2004) ........................................................................................................... 23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ................... 15, 18, 19

*Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, \*16 (S.D.N.Y. Sep. 23, 2014) 21, 23

*Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-JJM, 2016 U.S. Dist. LEXIS 179900, at \*5 (W.D.N.Y. Dec. 29, 2016) ........................................................................................... 17

**Statutes**

29 U.S.C. § 203(m) ........................................................................................................................ 3
29 U.S.C. § 216(b) ...................................................................................................................... 23
Fed. R. Civ. P. 30 ......................................................................................................................... 5
Fed. R. Civ. P. 23 ......................................................................................................................... 4
Fed. R. Civ. P. 62 ................................................................................................................. 11, 24
N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3 ......................................................................... 3
N.Y. Lab. Law § 195 .................................................................................................................... 8

Plaintiffs Henry Argudo and Diego Sanay ("Plaintiffs" or "Class Representatives") submit this memorandum of law in support of their motion for final approval of the Settlement Agreement and Release dated July 15, 2020 ("Settlement Agreement" or "Agreement").[1]  The settlement resolves this litigation pursuant to the proposed compromise set forth in the Agreement.  Defendants IMNY GS LLC d/b/a Il Mulino Tribeca, GFB Restaurant Corp. d/b/a Il Mulino Downtown, Wonderful Restaurant LLC d/b/a Il Mulino Uptown, K.G. IM Management, LLC, Pasta Perfect LLC, IM 60 Street, Il Mulino USA, IM LLC-I, Brian Galligan, and Gerald Katzoff (collectively referred to as "Defendants,"[2] "Il Mulino," or the "Restaurants," and together with Plaintiffs, the "Parties") have agreed to the terms of the Settlement Agreement and do not object to the relief requested herein.[3]

## I.   OVERVIEW AND INTRODUCTION

This class action was nothing like the ordinary wage and hour class actions usually seen in this Circuit.  Plaintiffs and the Class have scratched and clawed at every step of the way (and have been compelled to continue to do so) to achieve this settlement where, on average, each participating Class Members is set to recover more than $5,000.  This result was achieved by Class Counsel's dogged pursuit of Defendants throughout the litigation.  From the start, Plaintiffs opposed a motion to dismiss Defendant Parea Group LLC only to have that Defendant

---

[1]  In support of this motion, Plaintiffs submit the January 21, 2021 declaration of Josef Nussbaum ("Nussbaum Decl.") and exhibits thereto ("Nussbaum Ex. [NUMBER]").  Plaintiffs also submit the January 20, 2021 declaration of Jennifer Mills (Mills Decl.") of Rust Consulting, Inc.

[2]  For the purposes of this memorandum, the term "Defendants" refers to all Named Defendants in this Action with the exception of Parea Group, LLC with respect to which the Action is stayed. *See* Dkt. No. 77.

[3]  One of the corporate Defendants, Il Mulino USA, LLC ("IM USA") has filed for bankruptcy. *See* Dkt. No. 222. In light of this bankruptcy filing, the case was automatically stayed with respect to that Defendant. *See* Dkt. No. 223.  In the weeks following, Class Counsel, Defendants' counsel, and IM USA's bankruptcy counsel worked together to agree to a limited lifting of the automatic in order to effectuate the terms of the settlement.  The Parties successfully reached an agreement on this issue and, on November 10, 2020, the bankruptcy court So Ordered the Parties stipulation which allows for IM USA to participate in the Fairness Hearing for the limited purpose of consummating and effectuating the terms of the Settlement Agreement.  (Attached to the Nussbaum Decl. as Exhibit C is a copy of the So Ordered stipulation.)

declare bankruptcy immediately after the motion was denied.  The Parties then proceeded to discovery where Plaintiffs worked to enforce every deadline and ensure that all documents were produced and depositions were taken.  Plaintiffs then successfully defended themselves against a motion in which Defendants sought to have Defendant Katzoff dismissed from the case. At the same time, Plaintiffs successfully moved to have the case certified as class action.

After the class was certified, Defendants produced multiple "class lists"  which were either inaccurate, incomplete or both. Defendants represented that each of these iterations were adequate when, in fact, they were not. Class Counsel was left to comb through the lists to highlight missing data. It was only after the Court sanctioned Defendants $1,000 per day the list was delayed that Defendants finally produced a class list that complied with the Court's Orders.

The Parties then proceeded class-wide discovery where Plaintiffs once again had to scrutinize Defendants' discovery responses.  In fact, Defendants produced thousands of inaccurate payroll records which went to the heart of one of the Class's claims in the lawsuit. Plaintiffs sought the Court's intervention and Defendants were once again Ordered to pay discovery sanctions.

At the same time that the Parties were engaging in class-wide discovery, Covid-19 was raging in New York City.  Undeterred, Plaintiffs were able to continue moving this litigation along and were successful in achieving a terrific settlement for the Class despite the fact that Defendants' Restaurants were generating very little revenue.  As set forth in greater detail below, this would have been an exceptional result even if the Restaurants were thriving under normal financial conditions. The result is even more outstanding given the financial climate and public health emergency circumstances in which this deal was reached.

## II.   BACKGROUND

### A.  Procedural History

Plaintiffs and Class Members are current and former tipped food service employees (including servers, runners, bussers and bartenders) who—in the six years prior to the filing of the lawsuit—worked at five Il Mulino restaurants located in New York City. (Nussbaum Decl. ¶ 4.)  On January 26, 2018, Plaintiffs filed this lawsuit against Defendants asserting, *inter alia*, that Il Mulino and its owners/operators Defendants Gerald Katzoff and Brian Galligan violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by: (1) failing to pay employees for all hours they worked; (2) improperly taking a tip credit for the wages they paid to tipped employees, and, as a result, failing to pay tipped employees the minimum wage for all hours worked and the proper overtime premium for hours worked in excess of 40 in a week; and (3) failing to provide tipped employees with the appropriate wage notices and statements required under New York State's Wage Theft Prevention Act (the "WTPA"). (*Id*. ¶ 5.)  Plaintiffs also allege that Defendants improperly forced employees at the Trattoria Il Mulino location to share their tips with individuals who do not customarily receive tips. (*Id*. ¶ 6.)

The lion's share of the damages in the case center around Plaintiffs' claim that Defendants were ineligible to apply tip credits to Class Members' hourly wages because Defendants failed to meet the statutory notice prerequisites, which must be followed in order to pay employees pursuant to a tip credit. *See* 29 U.S.C. § 203(m); N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3.  Most of the remaining damages stem from Defendants' failure to comply with the notice requirements of the WTPA which could have resulted in penalties of up to $10,000 per Class Member if they successfully established this claim at trial. (Nussbaum Decl. ¶¶ 7-8.)

In December 2018, Defendants moved for partial summary judgment seeking a ruling

that Il Mulino's owner, Gerald Katzoff, was not Plaintiffs' employer for the purposes of the

FLSA and NYLL and that he should thus be dismissed as a Defendant in the lawsuit. (*Id*. ¶ 9.)

Contemporaneously with Defendants' motion, Plaintiffs moved for class certification pursuant to

Fed. R. Civ. P. Rule 23. (*Id*. ¶ 10.)  In September 2019, the Court ruled in Plaintiffs' favor on

both these motions and certified a class of tipped food-service employees employed at Il Mulino

between January 26, 2012 and the date of the Order certifying the Class ("Class Members"). *See*

*Argudo v. Parea Grp. LLC*, No. 18-CV-0678 (JMF), 2019 U.S. Dist. LEXIS 163249 (S.D.N.Y.

Sep. 24, 2019).[4]  Finally, the Court appointed Joseph & Kirschenbaum LLP ("J&K" or "Class

Counsel") as Class Counsel. *Id*. at 16.

### B.  Defendants' Failure to Produce Complete and Accurate Class Lists

As part of the class certification Order, the Court also Ordered Defendants to produce a

list of all class members and their relevant contact information by October 1, 2019. (*Id*. at 11.)

Defendants requested an extension of this deadline and the Court extended the deadline to

produce the list to October 9, 2019. (Dkt. no. 122.) Defendants did not produce a class list by the

new deadline.  As a result of the delay and Plaintiffs' motion, the Court Ordered Defendants to

pay a fine of $1,000 per day for each day the class list was not properly produced. (Id. at no.

130.) Over the weeks that followed, Defendants produced multiple lists, all of which Defendants

represented to be in full compliance with the Court's Orders. Class counsel spent significant time

reviewing these lists only to find them to be consistently inaccurate and incomplete.  After

relentlessly pursuing Defendants for more than two months, Defendants finally produced a

complete and accurate list more than two months after it was due. (Nussbaum Decl. ¶¶ 14-17.)

---

[4]  The Court also certified a subclass of tipped food-service employees employed at the Trattoria
Il Mulino location (the "Subclass Members") for the purposes of Plaintiffs' N.Y. Lab. Law §
196-d claim only. *See Argudo*, 2019 U.S. Dist. LEXIS 163249 at 15-16.

### C.  Discovery

The Parties had nearly completed all class-wide discovery by the time this case was resolved. In discovery, Defendants produced class-wide payroll, clock-in, and tip records for the entire liability period, as well as the Named Plaintiffs' and opt-in Plaintiffs' personnel files and time records.  Defendants also produced wage notification forms—to the extent they existed— that they alleged they had provided Class Members between 2012 and 2020. Throughout discovery, Defendants' previous and current counsel engaged Class Counsel in numerous in person, telephonic and email conversations to assist us in gaining a complete and accurate understanding of Defendants' payroll records. (*Id.* ¶¶ 18-20.)

Almost all of the relevant information that Defendants produced in discovery was only produced after Plaintiffs' relentlessly pursued Defendants to ensure that all responsive information was produced.  At times, Plaintiffs were only successful in procuring the relevant information after the Court was forced to intervene.  For example, in May and June 2020, Class Counsel spent significant time reviewing payroll records only to discern that Defendants had produced thousands of wage statement which were not in fact the statements that were provided to Class Members.  Defendants contested the significance of the inaccurate documents and the fact that inaccurate data had been produced in discovery.  Plaintiffs raised this issue with the Court and Defendants were Ordered to produced responsive data—to the extent accurate data existed—and were sanctioned for failing to abide by their discovery obligations. (*Id.* ¶¶ 21-22.)

In addition to the payroll records, Plaintiffs took a Fed. R. Civ. P. 30(b)(6) deposition of the corporate Defendants and depositions of the individual Defendants. At the time the Parties reached a settlement, Plaintiffs were preparing to conduct a second deposition of the corporate Defendants. Defendants deposed the two Named Plaintiffs and, at the time the case settled, the

Parties were in the process of scheduling depositions of an additional eleven opt-in Plaintiffs. Throughout the litigation, Class Counsel was also in regular contact with the Named Plaintiffs and Class Members. After thoroughly scrutinizing the payroll records, considering the extensive deposition testimony and frequent conversations with Class Members, Class Counsel was able to estimate the total potential damages in this case and to evaluate the strengths and weaknesses of the Class's claims. The case settled shortly before the fact discovery deadline of July 1, 2020. If the case had not settled, Plaintiffs were scheduled to file a motion for partial summary judgment on their tip credit and wage notice claims by July 17, 2020. (*Id.* ¶¶ 23-27.)

### D. Mediation and Settlement Negotiations

The Parties first attempted to formally resolve this matter in February 2020 by attending a full-day mediation with Mrs. Ruth Raisfeld, Esq., a well-known and well-respected mediator.  In addition to the individual Defendants and their attorneys, several representatives of a financial services company that finances Defendants' companies attended the mediation as well. At the mediation, Defendants strongly contested almost all of the Class's legal and factual arguments. Defendants also made substantial representations—supported by their lenders' representatives as well as by financial records they provided for Class Counsel to review—that the Restaurants were severely overleveraged and thus they would be unable to withstand a judgment in the amount that the Class was seeking. While the Parties made significant progress towards a settlement at the mediation, they were unable to agree on a figure that would resolve the case and the mediation concluded without a settlement being reached. (*Id.* ¶¶ 28-31.)

After the mediation, Defendants substituted their attorneys and the Parties continued to engage in hard-fought class-wide discovery.  The Parties also continued to explore the possibility of a resolution. Significantly, shortly after the mediation, the Covid-19 pandemic struck and

Defendants' restaurants have been either completely closed or operating at very limited capacity since March 2020. Thus, Defendants' already strained financial situation was worsened, as they were over-leveraged and now bringing in close to no income to service their debt and the future viability of the New York City Il Mulino locations was very much in doubt. In fact, as discussed *supra* (fn. 3), Defendant Il Mulino USA—which was the holding company for several corporate Defendants in this lawsuit—eventually filed for bankruptcy protection. In addition, as discussed below, Defendant Katzoff's individual liability was very much in question as it remained unclear that a jury would necessarily find that he was the Class's employer for the purposes of the FLSA and NYLL. Given these circumstances, Defendants consistently impressed on Class Counsel that they simply did not have the ability to pay a settlement the size of which the Class sought, and Defendants aggressively attempted to settle for far less than the amount the Parties finally agreed on. The settlement was only reached as a result of Class Counsel's persistent pursuit of Defendants in working to move the litigation through summary judgment practice and eventually trial. At the time the settlement was reached, Defendants' ability to pay and/or withstand a large judgment became even more precarious. Nevertheless, despite the raging pandemic, the Parties were able to continue to negotiate and, in late May 2020, finally agreed to settle the Class's claims for $2.5 million. Over the ensuing period, the Parties engaged in negotiations over certain terms of the settlement and finally arrived at a consensus on all terms of the Agreement in July 2020. (*Id*. ¶¶ 32-41.)

The $2.5 million dollar settlement amount is, of course, a compromise figure. It takes into account the Class's risks of establishing liability in light of disputes concerning the precise nature of the tip credit notices Defendants claim to have provided Class Members. For example, in discovery, Defendants produced employee handbooks for which Class Members signed an

"acknowledgment of receipt" forms and which, at times, set forth that Defendants intended to take a tip credit.  Defendants would have relied on these handbooks and the "acknowledgment of receipt" forms to try and establish that, contrary to Class Members' contentions, employees were informed that Defendants were taking a tip credit. (*Id*. ¶¶ 42-44.)

In addition, Defendants indicated that they intended to argue that they are entitled to an affirmative defense under N.Y. Lab. Law § 198(1-b), which, they contend based on New York decisional law, provides a complete defense to the Class's WTPA wage notice claims and tip credit wage claims. *See Ahmed v. Morgans Hotel Grp. Mgmt., LLC*, 54 Misc. 3d 1220(A) (N.Y. Cnty. Feb. 27, 2017); *Ahmed v. Morgan's Hotel Grp. Mgmt., LLC*, 160 A.D.3d 555 (1st Dep't 2018).  Specifically, in the *Ahmed* case, the New York County Supreme Court held that the NYLL § 198(1-b) affirmative defense to WTPA violations was also applicable to claims that an employer was not entitled to take the tip credit against the minimum wage because the employer provided improper notice of the tip credit. *Ahmed*, 2017 N.Y. Misc. LEXIS 638, at *13-14.  This ruling was ostensibly based on the similarity between the notice requirements an employer must meet before taking the tip credit, which are contained in the NYDOL's Hospitality Wage Order, and the wage notice requirements of N.Y. Lab. Law § 195(1). *See id*. Since the time this case settled, a federal case involving almost identical claims as those alleged here adopted the *Ahmed* reasoning. *See Marin v. Apple-Metro, Inc*., No. 12-cv-5274 (ENV) (CLP), 2020 U.S. Dist. LEXIS 195258 (E.D.N.Y. Oct. 7, 2020) (holding that the affirmative defense available under NYLL § 198(1-b) for NYLL § 195 notice violations is also available to employers who failed to meet the NYLL's tip credit notice requirements). (Nussbaum Decl. at ¶¶ 45-47.)

Plaintiffs here were prepared to argue that the *Ahmed* and *Marin* Courts simply got this issue wrong and that Defendants could not rely on any affirmative defense to their tip credit

violation.  Nevertheless, the *Ahmed* decisions remain the only New York State opinions on this

state law issue and therefore Plaintiffs acknowledged they had some risk in overcoming this

(incorrectly decided) precedent.  The Class's risk has only increased since the settlement was

reached considering that a federal court accepted the state court's reasoning. To be sure, despite

their contention that these decisions are wrong, Plaintiffs are not aware of any decisions—other

than *Ahmed* and *Marin*—that discuss this issue. (*Id*. at ¶ 48-51.)

The settlement amount also took into account Defendants' financial position, especially

considering the massive effect the Covid-19 pandemic continues to inflict on the Restaurants.

Even before the onset of the pandemic, Defendants represented that if the Class was able to be

awarded a full judgment against Defendants, it is unlikely the Class would be able to collect due

to the size of the "best case scenario" damages as compared with Defendants' tumultuous

finances.  Of course, since that time, the Restaurants' incomes have only decreased, and they are

in an existential crisis in light of Covid-19 interruption and their inability to service their very

large debts.  In fact, one of the Defendants—IM USA, which acts as a holding company for some

of the Defendants—declared bankruptcy and is seeking to reorganize. (*Id*. at ¶ 52-54.)

Finally, though Plaintiffs successfully thwarted Defendant Katzoff's efforts to be

dismissed from this lawsuit, it is possible that a jury could have decided that Katzoff was not an

employer for the purposes of the FLSA and NYLL and thus he would not be responsible for any

potential judgment the Class might be awarded at trial. *See, e.g., Hussain v. Burton & Doyle of*

*Great Neck LLC*, No. 14-cv-5924 (SIL), Dkt. No. 154 (jury verdict in wage and hour trial

awarding damages to plaintiffs but finding that individual defendant—who was denied summary

judgment on employer status issue—was not and employer for purposes for FLSA/NYLL).

In short, a judgment against Defendants in this case was not certain and any judgment could have ultimately resulted in all or some of the Defendant Restaurants closing, a result that would be highly detrimental to the Class, especially Class Members who continue to be employed by Defendants.

### E.  Activity After the Court Preliminarily Approved the Settlement

As part of the settlement and in order to protect the Class from the risks of Defendants' bankruptcy and/or other impediments to payment, Plaintiffs insisted that, as a material term of the settlement, Defendants would fund the entire settlement prior to the Fairness Hearing. (Ex. A at § 31.)  Specifically, the Parties agreed that the settlement would be paid in three installments, namely $1 million in August 2020, $500,000 in October 2020 and the remaining balance within 30 days after Class Members' Claim Forms are due, *i.e.*, by December 16, 2020. (*Id*. at § 3.1(B)(1)-(3).)  Defendants did not make the two initial installment payments of $1.5 million. However,  in August 2020, Defendants informed the Court and Class Counsel that they intended to fully fund the $1.5 million in payments that were due in August and October on or before December 3, 2020. Given this representation, the Class agreed to forgo their option to rescind the Agreement and instead decided to move forward with it. (Nussbaum Decl. ¶¶ 57-60.)

On December 3, 2020—the date the Final Payable Amount of over $1.9 million was due—Defendants informed the Court that IM USA was on the verge of being sold in bankruptcy and thus they sought a one-month extension of the Fairness Hearing pending the outcome of that sale. Dkt. No. 235.  Defendants also informed the Court that the non-debtor Defendants would fund the settlement on or before January 4, 2021, *i.e.*, after the bankruptcy sale was completed, and that, in light of that representation, Class Counsel agreed not to take action against Defendants for failure to fund by December 3, 2020, as required by the Agreement. *Id*.

Despite their representations to the Court and the Class, Defendants have still not funded the settlement. Defendants have also not provided any indication as to when they intend to fund the settlement. (Nussbaum Decl. ¶ 63.) As set forth in detail below, given these circumstances, the Class intends to seek an order that the judgment in this matter be immediately enforceable and that no stay of execution shall apply. *See* Fed. R. Civ. P. Rule 62(a) (providing that except for under circumstances inapplicable here, "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, *unless the court orders otherwise*") (emphasis added).

## III.   SUMMARY OF SETTLEMENT TERMS[5]

### A.   Settlement Fund

The Agreement provides that Defendants shall pay a maximum settlement amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) (the "Settlement Common Fund"). (Nussbaum Decl., Ex. A §§ 1.34, 3.1(A).)  The Settlement Common Fund includes awards to Class Members, service awards to the Class Representatives, attorneys' fees and costs, and reasonable Claims Administrator's fees.

### B.   Class Members and Claimants

The Class includes all the Restaurants' employees who worked as tipped, food-service employees during the Relevant Statutory Period ("Class Members"). (*Id*. § 1.7.) The "Relevant Statutory Period" refers to the period from January 25, 2012 until the date the Court preliminarily approved the settlement, *i.e.*, Jul 23, 2020. (*Id*. §1.32.)  While the Court originally certified a class and subclass of employees spanning the period of January 25, 2012 to September 24, 2019, the Parties agreed—for the purposes of settlement—to include individuals who worked for Defendants between September 25, 2019 and July 23, 2020 in the settlement Class. Class

---

[5] Capitalized terms in this section refer to terms as defined in Section 1 of the Settlement Agreement.

Counsel had the opportunity to review payroll records and wage notices that covered the entire settlement class period and concluded that the issues Plaintiffs alleged occurred during the class period certified by the Court (*i.e.*, until September 2019) continued to occur into 2020. From their part, Defendants insisted on including all individuals up until the date of preliminary approval so that they could achieve a degree of finality with respect to allegations of wage and hour violations at the Defendants restaurants. (Nussbaum Decl. ¶¶ 65-67.) To be sure, in wage and hour class action settlements, Courts in this Circuit routinely certify classes spanning a class period up until the date of preliminary approval. *See, e.g., Carrasco v. Endurance U.S. Holdings Corp.*, 2020 U.S. Dist. LEXIS 46905 (S.D.N.Y. Mar. 17, 2020); *Morales v. Rochdale Vill.*, 2019 U.S. Dist. LEXIS 232122, at *4 (E.D.N.Y. Dec. 6, 2019). Accordingly, for the purposes of settlement, we included in these individuals in the settlement Class.

### C.  Allocation Formula

Pursuant to the Settlement Agreement, the Net Settlement Fund ("NSF") shall be divided based on three categories of damages, namely: (1) the "Tip Credit Fund," which will account for 70% of the NSF, (2) the "WTPA Notice Fund" which will account for 25% of the NSF, and (3) the "Trattoria Subclass Fund" which will account for the tip disgorgement claim brought on behalf of the Subclass Members and which will account for 5% of the NSF.[6]  (*Id*. at § 3.4(B)(3).) The Tip Credit Fund shall be further divided between Class Members who worked between January 26, 2012 and December 31, 2014 ("Period A") and Class Members who worked between January 1, 2015 to the end of the Relevant Statutory Period ("Period B"). (*Id*. at §§ 3.4(B)(3)(a)(i)-(ii).)  This is because Defendants only have access to payroll records from 2015

---

[6]  As defined in § 1.22 of the Settlement Agreement, the "Net Settlement Fund" means the remainder of the Settlement Payment after deductions for Court-approved (1) fees and costs for the Settlement Claims Administrators; (2) attorneys' fees and costs for Class Counsel; and (3) service awards to the Named Plaintiffs.

and onwards and thus Class Members who worked for Defendants during Period A (*i.e.*, prior to 2015) will divide their portion of the Tip Credit Fund on the basis of days that they were employed by Defendants.  Conversely, Class Members who were employed by Defendants at any time after January 1, 2015 will have their portion of the Tip Credit Fund computed based on the amount of hours each Class Member worked for Defendants at the tip credit minimum wage during Period B. (Nussbaum Decl. at ¶¶ 69-71.)  The WTPA Notice Fund will be calculated based on the amount time each Class Member worked for Defendants and the Trattoria Subclass Fund will be calculated based on the amounts of tips each Subclass Member earned while working at the Trattoria location during the Relevant Statutory Period. (Ex. A at § 3.4(B)(3)(b).) No person eligible for payment under the Agreement will receive less than $50.00. (*Id*. at § 3.4(B)(2).)  All settlement checks issued by the Claims Administrator will be valid for 130 days from the date they are mailed, and the individual settlement amounts will be subject to tax withholding and/or reporting. (*Id*. at §§ 3.4(G), 3.5.)

### D.  The Release

In return for the above consideration, all NYLL Class Members who did not opt out of the NYLL Class will have released all wage and hour claims under the NYLL, and all Claimants who endorse their settlement checks will also release all FLSA claims against Defendants.  The Settlement Agreement does not release the FLSA claims of any Class Members who do not endorse their settlement checks.  (*Id*. at §§ 4.1(A), 4.1(B).)

### E.  Class Members' Response To Settlement

Pursuant to the Court's Jul 23, 2020 Order, Rust Consulting Inc., the Claims Administrator, mailed the notice and claim forms (the "Class Notice") to the 505 Class Members included on the Class List provided to the Rust by Defendants. (Mills Decl. ¶ 9.) Per the terms of

the Settlement Agreement, Class Members originally had 60 days from the date the Class Notice

was mailed, *i.e.*, until November 2, 2020, to return a Claim Form and IRS W-9 Form in order to

receive a portion of the settlement (the "Claim Form Deadline"). However, with the Court's

approval, the Parties subsequently extended the Claim Form Deadline to November 16, 2020.

(Dkt. No. 232; Mills Decl. ¶ 11.)

Per the estimates provided by the Claims Administrator, Class Members have recovered

roughly $1,072,733.08, or 65% of the Net Settlement Fund. (Mills Decl. ¶ 14.). Moreover, no

Class Members have objected to the settlement and only four individuals opted out of the

settlement. (*Id.* ¶ 16-17.) Thus, there was clear approval of the settlement by the Class Members.

## IV.     ARGUMENT

### A.  The Proposed Settlement Should Be Approved

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any

compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified

class may be settled, voluntarily dismissed, or compromised only with the court's approval." *See*

*also D'Amato v. Watman*, 236 F.3d 78, 85 (2d Cir. 2001). Approval of a class action settlement

is within the Court's discretion, "which should be exercised in light of the general judicial policy

favoring settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008)

(internal quotation omitted). "The Court must eschew any rubber stamp approval in favor of an

independent evaluation, yet . . . it must stop short of the detailed and thorough investigation that

it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495

F.2d 448, 462 (2d Cir. 1974).

### B.  The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved

In deciding whether to approve a settlement, courts consider the fairness of the settlement by looking at the negotiating process that led to the settlement and the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

### i.    Procedural fairness

A presumption of fairness arises where a settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (internal quotation omitted).  Relevant factors include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at *13 (S.D.N.Y. Oct. 19, 2005) (internal quotation omitted).

The Parties, all represented by experienced counsel, engaged in arm's-length, hard-fought negotiations throughout the litigation.  Specifically, the Court was involved in the litigation at almost every step of the way and is thus keenly aware of the arms-length nature in which this litigation was conducted. *See, e.g., Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513, at *11 (E.D.N.Y. Oct. 9, 2018) ("Having spent many hours with counsel in an effort to resolve this case and, by necessity, becoming familiar with the strengths and weaknesses of each side's case and the risks posed by continued litigation, this Court is of the view that the settlement was the product of vigorous arms-length negotiations.").  Moreover, the Agreement here was negotiated over many months and, once dollar amount was reached, the Parties engaged in vigorous negotiations over the other terms of the Settlement Agreement and exchanged multiple drafts of the Settlement Agreement prior to it being finalized. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010) (finding procedural fairness where, as here, "[t]he negotiations lasted six

months […] and once an agreement in principle was reached, several drafts were exchanged as the precise wording of the Settlement was negotiated.").

ii.     **Substantive fairness**

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463.  Rather than applying these factors in a formulaic manner, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice."  *Id.* at 468.

**1.     Complexity, expense, and likely duration of the litigation**

To assess the settlement's substantive fairness, courts weigh the benefits of a potential settlement against the time and expense of continued litigation. *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002).  "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) (internal quotation omitted).  This case is no exception.  There are over five hundred Class Members, claims have been brought under federal and state statutes, and Defendants contest liability.

Although the Parties have already undertaken considerable expense in litigating this matter, further litigation without settlement would necessarily result in additional expense and delay.  The Parties were already preparing to take at least eight more depositions and to engage

in costly and time-consuming summary judgment and pre-trial motion practice.  Plaintiffs would also need to reconstruct Defendants' entire front of the house payroll in order to present it to a jury.  Preparing and presenting evidence on complex factual and legal issues at trial would consume tremendous amounts of time and resources for both sides, as well as require substantial judicial resources to adjudicate the Parties' disputes.  Any judgment would likely be appealed, thereby extending the duration of the litigation and depleting any possible recovery.  This settlement, on the other hand, makes relief available to the Class in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2.    Reaction of the class to the settlement

The positive reaction of the Class Members overwhelmingly supports approval of the settlement.  In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that object to and opt out of the settlement.  Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement.  *In re Sony SXRD Rear Projection Television Class Action Litig.*, 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. 2008).

Here, the Claims Administrator mailed the Notice to all 505 Class Members. (Mills Decl. ¶ 9.)  No Class Members have objected to the settlement and only four Class Members opted out. (*Id.* ¶¶ 16-17.)  In addition, to date, roughly 66% of the Net Settlement Fund has been claimed by Class Members as 218 of 505 (or 43%) of Class Members, have claimed their individual portion of the Settlement. (Mills Decl. ¶ 14.) This is a very high participation rate for a claims made settlement. *See, e.g., Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-JJM, 2016 U.S. Dist. LEXIS 179900, at *5 (W.D.N.Y. Dec. 29, 2016) (finding where, as here, 43% of the class submitting a claim is "an extraordinary claims rate that demonstrates that the Class views the

Settlement favorably"); *Chambery v. Tuxedo Junction Inc.*, No. 12 Civ. 06539, 2014 U.S. Dist. LEXIS 101939, at *16 (W.D.N.Y. July 25, 2014) (noting that a 37% claims rate "is an unusually high participation rate for a 'claims made' settlement agreement. . . .). While a 43% claims rate is in and of itself a high rate, the amount actually claimed is roughly 66% of the fund.  This is because a percentage of the of the class includes employees that worked for Defendants for as little as one day, and that group would for obvious reasons be less likely to react at all to the settlement.  In other words, the percentage of Claimants with significant claims that filed claim forms is much higher than 43%, which on its own is a high claims rate. Thus, Class Members' satisfaction with the settlement is clear.

### 3. Stage of the proceedings and the amount of discovery completed

As set forth above, discovery in this case was almost complete and Plaintiffs were preparing to submit a motion for partial summary judgment in which they would seek liability on the lion's share of the damages in this case.

### 4. Risks of establishing liability

In evaluating the risks of establishing liability, a court must "assess the risks of litigation against the certainty of recovery offered by the Settlement."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 579.  Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing[.]" *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

Defendants had plenty of ammunition with which the fight the Class's claims.  Specifically, the only two cases to have decided the tip credit issue—the primary issue in this case—resulted  in losses for the plaintiffs and set forth a standard which, if accepted by this Court, would have essentially nullified the Class's claims here. Thus, if this settlement was not reached, the Class would have effectively been asking this Court to decide the issue in favor of the employees' side

for the first time. While Plaintiffs are confident that they would have been successful in explaining where the *Ahmed* and *Marin* courts got it wrong, there is no question that the Class would have been facing an uphill battle.  There is the inherent risk that the jury could view other components of the case differently than Plaintiffs.  For example, the jury could find that Defendant Katzoff was not Class Members' employer for the purposes of the FLSA and NYLL and thus not individually liable for damages.

Finally, Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The settlement alleviates this uncertainty and is therefore preferable to trial which may result in a smaller recovery than the one achieved here.

### 5. Risks of establishing damages

Courts also consider the risks of establishing damages.  Regardless of Plaintiffs' ability to establish liability, they still face "risks in proving [their] damages at trial." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 119.  While damages would be calculated primarily based on Defendants' documents, "damages are a matter for the jury, whose determinations can never be predicted with certainty." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128; *Maley*, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

### 6. Risks of maintaining the class action through trial

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider, among other things, whether the class could be decertified.  *D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386, 1991 U.S.

Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991)X.  Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class.  *Glover*, 1991 U.S. Dist. LEXIS 4995, at *18.  If the proposed settlement is not approved, Defendants will almost assuredly seek to have the Class decertified prior to trial. Specifically, as explained above, Defendants would not doubt argue that the affirmative defense available under NYLL § 198 applies to the Class's tip credit notice claims.  NYLL § 198 provides that the employer can escape liability for a notice violation if it has made a "complete and timely" payment of wages to the employee.  The analysis of whether or not each Class Member received a complete and timely payment of wages is by definition an individualized analysis which could effectively undue the "commonality" and "predominance" elements necessary for the Class to be maintained through trial. In addition, if submitted, a decertification motion will be time-consuming and costly and thus "[s]ettlement eliminates the risk, expense, and delay inherent in the litigation process." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *17 (S.D.N.Y. Jan. 28, 2014).

### 7.    Ability of defendants to withstand a greater judgment

Courts consider a defendant's ability to withstand a judgment greater than the settlement. *D.S.*, 2008 U.S. Dist. LEXIS 96084, at *57.  Here, Defendants' ability to withstand a greater judgment is doubtful.  As outlined above, at mediation, Defendants represented that—even prior to the breakout of the Covid-19 pandemic—they were significantly overleveraged.  This unsteady financial standing has without a doubt only been exacerbated by the effects of the Covid-19 pandemic as the Restaurants have been either closed or operating at limited capacity since March 2020 and Defendant IM USA—which owns some of the other Corporate Defendants—has already filed for bankruptcy.  Most significantly, Defendants' ability to

withstand a larger judgment is highlighted by the fact that they have still not funded the

settlement despite their explicit assurances to the Court and Class Counsel that they would do so.

Indeed, even if Defendants could have withstood a greater judgment, "a defendant's

ability to withstand a greater judgment, standing alone, does not suggest that the settlement is

unfair." *Capsolas v. Pasta Res., Inc.*, 2012 U.S. Dist. LEXIS 144651, *17 (S.D.N.Y. 2012)

(internal quotation marks omitted).

### 8.    Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation

The final two *Grinnell* factors can be considered together.  "The most important factor in

the court's assessment of the proposed settlement is the 'strength of the case for plaintiffs on the

merits, balanced against the [relief] offered in settlement.'"  *D.S.*, 2008 U.S. Dist. LEXIS 96084,

at *53 (quoting *Grinnell*, 495 F.2d at 455).  The determination of the "'best possible' recovery

necessarily assumes Plaintiffs' success on both liability and damages covering the full Class

Period alleged in the Complaint as well as the ability of Defendants to pay the judgment."

*Maley*, 186 F. Supp. 2d at 365.

These factors weigh heavily in favor of approval of the settlement.

> [T]here is a range of reasonableness with respect to a settlement — a range which
> recognizes the uncertainties of law and fact in any particular case and the
> concomitant risks and costs necessarily inherent in taking any litigation to
> completion.

*Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sep. 23, 2014)

(internal quotation marks omitted).  Here, Defendants have agreed to settle this case for a

maximum payment of $2.5 million.  It is worth noting that a "best cases scenario" calculation is

close to impossible or, at best, it is not an exact science. As explained above, there were

significant disputes as to the extent of Defendants' liability. Class Counsel estimated that the

"best cases scenario" tip credit damages were roughly $3.2 million and tips allegedly given to tip-ineligible employees at Trattoria Il Mulino were approximately $360,000. The tip misappropriation figures were based on an assumption that tip-ineligible individuals participated in the tip pool every shift.  Finally, Class Counsel estimated that the Class could be entitled to NYLL § 195 penalties totaling $4 million. These figures are rough approximations and are based on the Class's "best case scenario" which assumes complete success on liability and damages based on counsels' best estimates. As set forth above, the Class faced risks on almost all of these claims as the only two cases to have analyzed and decided this issue supported Defendants' position.  Moreover, if the settlement had not been reached it appeared that Defendants were prepared to drag the case out for as long as possible.

Even if the Class went to trial and were successful, there is very real risk that they would not be able to collect a larger judgment especially considering that (as the Court is aware) Defendants have still not funded the Settlement despite their promises to do so.  In addition, there remained the very real concern that a jury would not find Defendant Katzoff individually liable.  Put simply, if the Class fought this case to a judgment, it is unclear how much they would actually be owed and, if anything, who they would collect it from.  By contrast, agreeing on a settlement now ensures that Claimants will receive substantial compensation (*i.e.*, on average, more than $5,000 each.)  Accordingly, in light of the risks in maintaining a class and establishing liability and damages, Class Counsel believe that this settlement—representing more than a 65% recovery of the Class's compensatory damages—is an excellent recovery for the Class.  *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 124 (S.D.N.Y. 2009) (approving settlement amounting to 30.55% of the best possible recovery and noting the "significant dispute between the parties about the proper measure of damages").

Thus, while there is certainly a possibility that the Class may be awarded more money, including additional penalties and the like, after trial (and appeal), the settlement provides the significant benefit of an immediate and substantial payment to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road." *Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, 01 Civ. 11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. 2004). Moreover, the "substantial amount of the settlement" in this case—$2.5 million—"weighs in favor of final approval." *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *16

The *Grinnell* factors all weigh in favor of issuing final approval of the settlement Agreement.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant final approval.

### iii.    The Notice to the Class Meets the Requirements of Rule 23

As set forth in the Court's July 23, 2020 Order, the Class Notice satisfies the requirements of Rule 23(c)(2)(B).

### C.  Approval of the Settlement of the Opt-In Plaintiffs' FLSA Claims is also Appropriate

Plaintiffs also seek approval of the settlement of the FLSA wage and hour claims.  FLSA claims are brought as a "collective action" in which employees must affirmatively opt-in to the litigation.  29 U.S.C. § 216(b).  Because employees who do not opt-in to an FLSA action do not lose their right to file suit at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *See Capsolas v. Pasta Resources, Inc.*, 2012 U.S. Dist. LEXIS 144651, at *18-19 (S.D.N.Y. Oct. 5, 2012).  Thus, the high standard for approval of a class settlement does not apply to an FLSA settlement.  "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Id.* at *19.  The

adversarial nature of an FLSA action is typically a sufficient indication of a settlement's fairness. *Id.* "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* The settlement in this case was the result of vigorously contested litigation and arm's-length negotiation. It is thus fair and reasonable and should be approved. (To be sure, the FLSA claims in this lawsuit generally overlapped with the NYLL claims (*i.e.*, overtime violations) so an independent analysis of those claims is not necessary to analyze the fairness of this Settlement.)

### D.  The Class Will Seek Immediate Enforcement of the Judgment

Fed. R. Civ. P. Rule 62(a) provides that except for under circumstances inapplicable here, "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, *unless the court orders otherwise*." (emphasis added). "The purpose of Rule 62(a) is to stay execution of judgment . . . to afford litigants an ample period of time to consider whether to appeal, to file a motion for new trial, and/or to seek a stay of execution of judgment." *Artmann v. Center Garage, Inc.,* 2012 WL 5332355, at *3 (N.D. Ind. 2012) (quoting *Great Am. Ins. Co. v. Gen. Contractors & Constr. Mgmt.*, 2008 WL 2940665, *1 (S.D. Fla. 2008)). "Regardless, courts are afforded the 'authority to dissolve the automatic stay.'" *Trustees v. Actin, Inc*., 2020 U.S. Dist. LEXIS 46341, at *1-2 (N.D. Ind. Mar. 17, 2020) (quoting Fed. R. Civ. P. 62(a) advisory committee's note to 2018 amendment ("2018 Advisory Notes")).

The 2018 Advisory Notes highlight that "[a]mended Rule 62(a) expressly recognizes the court's authority to dissolve the automatic stay . . . One reason for dissolving the automatic stay may be a risk that the judgment debtor's assets will be dissipated." In addition, the 2018 Advisory Notes explain that the only reason the automatic stay of execution was extended from 14 days to 30 days was because the time for making motions under Rules 50, 52, and 59 was

extended to 28 days and thus there was a gap between the time a judgment-debtor had to appeal (28 days) and the automatic stay they enjoyed (14 days). Thus, the new Rule 62(a) was changed to 30 days to cover that issue only.

In this case, where the anticipated judgment will be entered pursuant to the consensual settlement between the Parties, there is no concern that Defendants will appeal or file a motion for new trial. Accordingly, once the Court approves the Settlement, the Class will move the Court to set aside the automatic stay and allow for the immediate enforcement of the judgment. *See, e.g., Allstar Mktg. Grp., LLC v. 178623*, 2020 U.S. Dist. LEXIS 181086, at *18 (S.D.N.Y. Sep. 30, 2020) (waiving 62(a) requirements and allowing immediate enforcement of a judgment); *Allstar Mktg. Grp., LLC v. 158*, 2019 U.S. Dist. LEXIS 141913, at *11 n.6 (S.D.N.Y. Aug. 20, 2019) ("[T]he 2018 amendment to Rule 62 expressly acknowledged that the district court has the power to terminate the automatic stay. Thus, if a plaintiff is concerned that defendants might attempt to conceal assets during the pendency of the automatic stay, it should include a dissolution of that stay as part of the relief requested in its proposed judgment.").

Class Counsel is prepared to make this request at the Fairness Hearing. If the Court deems it necessary, the Class is prepared to make this motion as formal motion once the Court approves the settlement.[7]

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant final approval of the Settlement Agreement and enter Judgment in accordance with the terms of the Agreement.

---

[7] Attached as Exhibit G to the Nussbaum Decl. is a proposed judgment. As with all judgments entered in favor of plaintiffs bringing claims under the NYLL, this judgment includes (1) a 15% escalation in the event the judgment is not satisfied within 90 days of its final entry, and (2) applicable post-judgment interest. *See* NYLL § 198(4); *Ismail v. Bake Ridge Bagels, Inc*., 2020 U.S. Dist. LEXIS 90980, at *2 (E.D.N.Y. May 26, 2020); *Miranda v. Astoria Provisions*, 2020 U.S. Dist. LEXIS 180290, at *5 (E.D.N.Y. Sep. 30, 2020). As the entire anticipated judgment in this case stems from NYLL violations, any potential 15% escalation under the NYLL should apply to the entire judgment amount.

Dated: New York, New York
      January 21, 2021                      **JOSEPH & KIRSCHENBAUM LLP**

                                         <u>s/ *Josef Nussbaum*</u>
                                         D. Maimon Kirschenbaum
                                         Josef Nussbaum
                                         32 Broadway, Suite 601
                                         New York, NY 10004
                                         212-688-5640

                                         *Attorneys for Named Plaintiff, FLSA Collective*
                                         *Plaintiffs, and the Class*