UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENRY ARGUDO and DIEGO SANAY, on behalf of themselves and others similarly situated

        Plaintiffs,

v.

PAREA GROUP LLC, d/b/a TRATTORIA IL MULINO, IMNY GS LLC d/b/a IL MULINO TRIBECA, GFB RESTAURANT CORP. d/b/a IL MULINO DOWNTOWN, WONDERFUL RESTAURANT LLC d/b/a IL MULINO UPTOWN, K.G. IM MANAGEMENT, LLC, PASTA PERFECT LLC, IM 60 STREET, IL MULINO USA, IM LLC-I, BRIAN GALLIGAN, and GERALD KATZOFF,

        Defendants.

18 Civ. 678 (JMF)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' (UNOPPOSED) MOTION FOR SERVICE AWARDS, SETTLEMENT CLAIMS ADMINISTRATOR'S FEES, AND CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS**

D. Maimon Kirschenbaum
Josef Nussbaum
**JOSEPH & KIRSCHENBAUM LLP**
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs, FLSA Opt-in Plaintiffs, and F.R.C.P. Rule 23 Class Members*

January 21, 2021

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND ........ 1

II. ARGUMENT ........ 1

A. SERVICE AWARDS SHOULD BE GRANTED TO PLAINTIFFS ........ 1

B. THE CLAIMS ADMINISTRATOR'S FEES SHOULD BE APPROVED ........ 3

C. CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED ........ 4

1. Class Counsel's Requested Fee Award is Reasonable ........ 6

2. Goldberger factors ........ 6

a) Counsel's time and labor ........ 6

b) The litigation's magnitude and complexity, and the risks of litigation ........ 10

c) Quality of the representation ........ 12

d) The fee is reasonable in relation to the settlement ........ 13

e) Public policy considerations ........ 14

III. CONCLUSION ........ 14

# Table of Authorities

**Cases**

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010) ..................................... 6

*Aponte v. Comprehensive Health Mgmt.*, 10 Civ. 4825 (JLC), 2013 U.S. Dist. LEXIS 47637, at *16 (S.D.N.Y. Apr. 2, 2013)........................................................................................................ 5

*Asare v. Change Grp. N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, at *52 (S.D.N.Y. Nov. 15, 2013) ........................................................................................................................................ 9

*Banyai v. Mazur*, No. 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 25272, at *12 (S.D.N.Y. Mar. 30, 2007) ................................................................................................................................... 8

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ............................................ 10

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................. 7

*Donnelly v. Peter Luger of Long Island*, No. 2:13-cv-1377 (LDW) (ETB), 2014 U.S. Dist. LEXIS 203725, at *22 (E.D.N.Y. Nov. 13, 2014).................................................................... 12

*Flores v. Mamma Lombardi's of Holbrook, Inc.* 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) ....... 4

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ....................................... 2, 3, 17

*Gilliam v. Addicts Rehab. Ctr.*, No. 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *8, 14-15 (S.D.N.Y. 2008)....................................................................................................... 3, 17

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)............................................. 8

*In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004)................... 13

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 ................................................................. 4, 10

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ................................................................................................................................... 7

*Kiefer v. Moran Foods, LLC*, No. 12-CV-756 (WGY), 2014 U.S. Dist. LEXIS 106924, 2014 WL 3882504, at *8 (D. Conn. Aug. 5, 2014).................................................................................. 6

*Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008 (RJS), at 20:1-3 (S.D.N.Y. Dec. 22, 2015)........................................................................................................................ 15

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) .................... 7, 8, 17

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) ............................ 6

*Perez v. Jupada Enters.*, 2012 U.S. Dist. LEXIS 177491, at *2-5 (S.D.N.Y. Dec. 13, 2012) ....... 5

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 11 Civ. 0520 (JLC), 2012 U.S. Dist. LEXIS 25060, at *10 (S.D.N.Y. Feb. 24, 2012) ......................................................................... 10, 11, 15

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012) ................................................................................ 10

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ................................... 3

*Strougo v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) ................................................ 5

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993) .......................................... 6

*Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007) ................................................................................................................................ 9, 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) .......................................... 10

*Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *21-22 (S.D.N.Y. Sep. 23, 2014) ........................................................................................................................................ 10, 12

Subject to Court approval, Named Plaintiffs/Class Representatives Henry Argudo and Diego Sanay (hereinafter "Named Plaintiffs"), on behalf of themselves and the Fed. R. Civ. P. Rule 23 Class, and Defendants IMNY GS LLC d/b/a Il Mulino Tribeca, GFB Restaurant Corp. d/b/a Il Mulino Downtown, Wonderful Restaurant LLC d/b/a Il Mulino Uptown, K.G. IM Management, LLC, Pasta Perfect LLC, IM 60 Street, Il Mulino USA, IM LLC-I, Brian Galligan, and Gerald Katzoff (hereinafter collectively referred to as "Defendants"[1] and together with Class Representatives, the "Parties") have settled this wage and hour class action for $2,500,000. Defendants agree to the terms of the settlement and do not object to the relief requested herein.[2]

In accordance with the Agreement, in this motion, Plaintiffs respectfully request that the Court: (1) approve service awards to the Named Plaintiffs, (2) approve the Claims Administrator's fees, and (3) approve Class Counsel's attorneys' fees and costs.

## I. FACTUAL BACKGROUND

Plaintiffs respectfully incorporate the factual background set forth at pages 3-10 of Plaintiffs' memorandum of law in support of their motion for final approval of the settlement which was filed simultaneously with this motion.

## II. ARGUMENT

### A. Service Awards Should Be Granted To Plaintiffs

Under the proposed settlement Agreement, and subject to the Court's approval, payments of $10,000 are to be awarded to each of the Named Plaintiffs. (Nussbaum Decl., Ex. A § 3.3(A).) A court may grant such awards in a class action. In doing so, a court will consider:

---

[1] For the purposes of this memorandum, the term "Defendants" refers to all Named Defendants in this lawsuit with the exception of Parea Group, LLC with respect to which the action is stayed. *See* Dkt. No. 77.

[2] In support of this motion, Plaintiffs submit the declaration of Josef Nussbaum ("Nussbaum Decl.") dated Janaury 21, 2021 and exhibits thereto ("Nussbaum Ex. [NUMBER]"). Plaintiffs also submit the January 20, 2021 declaration of Jennifer Mills (Mills. Decl.") of Rust Consulting, Inc.

> [t]he existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (internal quotation omitted). Service awards "are particularly appropriate in the employment context. . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Id.*

The Named Plaintiffs expended considerable time and effort to assist Class Counsel with the case. They initiated this action and participated in the mediation process. They regularly communicated with Class Counsel about the case, including providing Class Counsel with documents, reviewing documents, and explaining relevant and necessary factual information to Class Counsel. Named Plaintiffs provided responses to Defendants' discovery requests and were deposed. The Named Plaintiffs also provided valuable assistance in culling information and support for Plaintiff's opposition to Defendants' motion to dismiss Defendant Katzoff from the lawsuit. Plaintiffs were similarly instrumental in culling support for their motion for class certification. Thus, the Named Plaintiffs' assistance was crucial in the prosecution and proposed resolution of the case. (Nussbaum Decl. ¶¶ 75-81.)

The Named Plaintiffs also assumed significant risks in prosecuting this action. In the employment context, where workers can be considered "trouble makers," individuals who take a leading role in litigation can be particularly vulnerable to retaliation. *E.g.*, *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, less others be dissuaded."). Even

where there is not a record of actual retaliation (like here, where no such record exists), service fees are appropriate in recognition of the risk of retaliation assumed by lead plaintiffs for the benefit of absent class members.  *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action . . . , the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

The service awards totaling $20,000 are modest in comparison with those approved by other courts, and it represents less than 1% of the Settlement Fund.  *See*, *e.g.*, *Gilliam v. Addicts Rehab. Ctr.*, No. 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *8, 14-15 (S.D.N.Y. 2008) (awarding incentive payments totaling 3.67% of $450,000 settlement); *Frank*, 228 F.R.D.at 187-88 (awarding an incentive payment of 8.42% of $125,000 settlement).  Because of their time, assistance, and development of the case, all of which were subject to potential retaliation, payments to the Named Plaintiffs are appropriate and justified.

### B.  The Claims Administrator's Fees Should Be Approved

Pursuant to the terms of the Settlement Agreement, the Parties retained Rust Consulting Inc. to administer the settlement. (Nussbaum Decl. ¶ 82.)  The total settlement administration costs, including fees incurred and future costs for completion of the administration of the settlement payments, are estimated to total $39,186.50. (Mills Decl. ¶ 18.)  Accordingly, Plaintiffs respectfully request that the Court approve the Parties' request to pay $39,186.50 to the Claims Administrator, subject to Class Counsel's review of the Claims Administrator's invoices. *See, e.g., Flores v. Mamma Lombardi's of Holbrook, Inc.* 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (finding that "[c]ourts within this district have awarded up to $50,000.00 for the settlement claims administrator" (citation omitted)).

**C. Class Counsel's Attorneys' Fees And Costs Should Be Approved**

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted). "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the three-fold benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.* Here, the Settlement Agreement authorizes Class Counsel to receive one-third of the Settlement Amount as attorneys' fees. Nussbaum Decl., Ex. A at § 3.2.

Although there are two ways to compensate attorneys for successful prosecution of class actions (the lodestar method or the percentage of the recovery method), "[t]he trend in [the Second] Circuit is toward the percentage method, . . . which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)(internal quotation marks omitted); *see also Perez v. Jupada Enters.*, 2012 U.S. Dist. LEXIS 177491, at *2-5 (S.D.N.Y. Dec. 13, 2012) ("The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one.") (Furman J.) (citing cases); *Aponte v. Comprehensive Health Mgmt.*, 10 Civ. 4825 (JLC), 2013 U.S. Dist. LEXIS 47637, at *16 (S.D.N.Y. Apr. 2, 2013) (same); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (collecting cases). The percentage

method is preferred because it rewards prompt and efficient resolution of class litigation, while strict application of the lodestar method encourages inefficiency and resistance to prompt settlement. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993).

Where the percentage method is used in a claims-made settlement, "[a]n allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *see also, e.g., Kiefer v. Moran Foods, LLC*, No. 12-CV-756 (WGY), 2014 U.S. Dist. LEXIS 106924, 2014 WL 3882504, at *8 (D. Conn. Aug. 5, 2014) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants.")(citations omitted).

"[Second] Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that 'the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class.'" *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010) (quoting *Masters*, 473 F.3d at 436). Put simply, "[t]he value of legal advice rendered but not heeded is undiminished by its rejection. Nor is the value of legal service rendered in the creation of a settlement fund diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne*, 264 F.R.D. at 41.[3]

---

[3] *See also, e.g., Chambery v. Tuxedo Junction Inc.*, No. 12-06539, 2014 WL 3725157, at *9 (W.D.N.Y. July 25, 2014) (court found request of one-third of entire settlement fund reasonable where settlement agreement included reverter clause); *In re Penthouse Exec. Club Comp. Litig.*, No. 10-1145, 2014 WL 185628, at *11 (S.D.N.Y. Jan. 14, 2014) (settlement included reversionary fund and court determined that "[t]he attorneys' fee percentage should come out of the full settlement amount, rather than the claimed funds."); *In re Nigeria Charter Flights Litig.*, No. 04-304, 2011 WL 7945548, at *5 (E.D.N.Y. Aug. 25, 2011), report and recommendation adopted, No. 04-304, 2012 WL 1886352 (E.D.N.Y. May 23, 2012) (court determined "[a]n allocation of fees by percentage should therefore be awarded on the basis of the total funds made available where claimed or not.").

5

### 1. Class Counsel's Requested Fee Award is Reasonable

Pursuant to the Settlement Agreement, Class Counsel seeks an attorneys' fee award of $830,302 (*i.e.*, one-third of the Settlement Amount after costs) and $9,091.86 as costs. (*See* Nussbaum Decl. ¶ 115 for a breakdown of the costs for which Class Counsel seek reimbursement.)  This request is consistent with both the retainer agreements Class Counsel entered into with Plaintiffs and the norms of class litigation in this Circuit.  *See*, *e.g.*, *Perez*, 2012 U.S. Dist. LEXIS 177491, at *2-5 (awarding fees of 33% on a percentage of fund basis) (Furman J.); *Aponte*, 2013 U.S. Dist. LEXIS 47637 at *16 (same); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (awarding fees of one-third of $42,000,000); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) (awarding fees of 33% of $9,250,000 settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (awarding fees of 33% of the $11.5 million settlement fund, and noting that courts in the Second Circuit have awarded fees as large as 50% of a settlement fund).

### 2. Goldberger factors

In determining whether a fee is reasonable, courts consider "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

#### a) Counsel's time and labor

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement.  Class Counsel conducted an extensive investigation and prosecution of

6

this case—for over two and half years—prior to reaching a settlement.  The time invested in obtaining discovery and crafting Plaintiffs' case in anticipation of trial was a reasonable expenditure of Class Counsel's time. *See, e.g., Maley*, 186 F. Supp. 2d at 371-372 (finding that investigation into the case, briefing of court documents, court appearances, and participation in settlement negotiation amounted to a reasonable expenditure of time).  Moreover, Class Counsel were able to reach a resolution efficiently through targeted discovery that enabled Class Counsel to evaluate the strength of the case, identify damages, and thereby engage in productive settlement discussions.

Class Counsel kept the Plaintiffs informed of and involved in the action through regular contact with them. (Nussbaum Decl. ¶ 112.)   *Banyai v. Mazur*, No. 00 Civ. 9806 (SHS), 2007 U.S. Dist. LEXIS 25272, at *12 (S.D.N.Y. Mar. 30, 2007) (noting that Class Counsel "spent time communicating with members of the Class").  Among other tasks, Class Counsel took a Fed. R. Civ. P. 30(b)(6) depositions, deposed the individual Defendants, defended two depositions, prepared and served discovery responses, reviewed thousands of payroll documents produced by Defendants, defended a motion for partial summary judgment, submitted a successful motion for class certification and engaged in extensive settlement negotiations that spanned more than five months.

Class Counsel invested over $296,000 worth of time – including over 700 attorney hours and at least 128 paralegal hours – in obtaining a fair settlement for the Class. (Nussbaum Decl. ¶ 109.)  Class Counsel seeks a fee award – in addition to reimbursement of costs – of $830,302, or a 2.8 multiplier of the lodestar.  "[A]pplying only the lodestar method would penalize Class Counsel for reaching early settlement and achieving a quick and manifestly favorable result." *Asare v. Change Grp. N.Y., Inc.*, 2013 U.S. Dist. LEXIS 165935, at *52 (S.D.N.Y. Nov. 15,

2013) (citing cases where courts awarded multipliers of up to five or six times counsel's lodestar.)

When the lodestar is used, a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney." *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007); *see also, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlement where multiplier ranged up to 8.5 times); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (applying a multiplier of 6.3 in wage and hour action); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 11 Civ. 0520 (JLC), 2012 U.S. Dist. LEXIS 25060, at *10 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar in wage and hour action); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012) (noting in a wage and hour settlement that "[c]ourts routinely award lodestar multipliers between two to six."); *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *21-22 (S.D.N.Y. Sep. 23, 2014) (approving a 5.1 lodestar multiplier in a wage and hour case); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts[.]").

"Courts also recognize that efficiency should not be penalized where . . . it has produced a fair result." *Pinguil v. We Are All Frank, Inc.*, No. 17-CV-2237 (BCM), 2018 U.S. Dist. LEXIS 88339, 2018 WL 2538218, at *5 n.4 (S.D.N.Y. May 21, 2018) (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 418 (2d. Cir. 2010) (finding that "the percentage method . . . avoids the lodestar method's potential to 'create a disincentive to early settlement'")); *see also Zeltser*, 2014 U.S. Dist. LEXIS 135635, 2014 WL 4816134, at *8 ("Fee awards in wage and hour cases

are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." (internal quotation marks omitted)).

Here, Class counsel used their significant expertise in litigating cases on behalf of food-service employees, as well as their relationship with opposing counsel, to reach this hard-fought settlement. *See, e.g., Ramirez*, 2012 U.S. Dist. LEXIS 25060, at *10 (finding in an NYLL class settlement that Joseph & Kirschenbaum was "able to use their considerable expertise in the type of claims asserted […] to achieve an excellent result for the class in a highly efficient manner at an early stage of litigation."). Finally, as the Court witnessed, it was Class Counsels doggedness throughout the litigation that led to this excellent result.

Moreover, the lodestar multiplier sought by Class Counsel "is also reasonable because it will diminish over time." *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *23. Here, where "class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Id.* (internal quotation marks omitted); *see also Donnelly v. Peter Luger of Long Island*, No. 2:13-cv-1377 (LDW) (ETB), 2014 U.S. Dist. LEXIS 203725, at *22 (E.D.N.Y. Nov. 13, 2014)("In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering Class Member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund.).

"The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the

9

settlement going forward, also supports their fee request." *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *24.  While this is true in every class action settlement, it is especially true in this case where our firm has spent significant time keeping Class Members apprised of the settlement despite working remotely and with a limited support staff as a result of office closures due to the Covid-19 pandemic.  (Nussbaum Decl. ¶¶ 103-106.)  Moreover, given that Defendants have still not funded the settlement, Class Counsel may have to continue to expend significant time and resources to secure Defendants' compliance (hopefully not). For these reasons, the fees that Class Counsel seek are therefore reasonable.

### b) The litigation's magnitude and complexity, and the risks of litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *30 (internal quotation omitted); *see also In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("The contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees."). Class Counsel took this case pursuant to a retainer agreement with Plaintiffs that stated that Counsel would receive a percentage of the recovery *only if* Plaintiffs obtained a recovery.  As set forth in Plaintiffs' motion for final approval of the settlement, this was a complex litigation, and Plaintiffs faced significant risks in establishing liability and in maintaining a class.  Many of these risks could have led to a very small recovery or potentially no recovery at all.  Most significantly, the Class faced risk as the only two cases to have analyzed and decided the tip credit notice issue supported Defendants' position.  Specifically, Defendants indicated that they intended to argue that they are entitled to an affirmative defense under N.Y. Lab. Law § 198(1-b), which, they contend based on New York decisional law, provides a complete defense to the

10

Class's WTPA wage notice claims and tip credit wage claims. *See Ahmed v. Morgans Hotel Grp. Mgmt., LLC*, 54 Misc. 3d 1220(A) (N.Y. Cnty. Feb. 27, 2017); *Ahmed v. Morgan's Hotel Grp. Mgmt., LLC*, 160 A.D.3d 555 (1st Dep't 2018).  In the *Ahmed* case, the New York County Supreme Court held that the NYLL § 198(1-b) affirmative defense to WTPA violations was also applicable to claims that an employer was not entitled to take the tip credit against the minimum wage because the employer provided improper notice of the tip credit. *Ahmed*, 2017 N.Y. Misc. LEXIS 638, at *13-14.  This ruling was ostensibly based on the similarity between the notice requirements an employer must meet before taking the tip credit, which are contained in the NYDOL's Hospitality Wage Order, and the wage notice requirements of N.Y. Lab. Law § 195(1). *See id*. Since the time this case settled, a federal case involving almost identical claims as those alleged here adopted the *Ahmed* reasoning. *See Marin v. Apple-Metro, Inc*., No. 12-cv-5274 (ENV) (CLP), 2020 U.S. Dist. LEXIS 195258 (E.D.N.Y. Oct. 7, 2020) (holding that the affirmative defense available under NYLL § 198(1-b) for NYLL § 195 notice violations is also available to employers who failed to meet the NYLL's tip credit notice requirements).

      Plaintiffs here were prepared to argue that the *Ahmed* and *Marin* Courts simply got this issue wrong and that Defendants could not rely on any affirmative defense to their tip credit violation.  Nevertheless, the *Ahmed* decisions remain the only New York State opinions on this state law issue and therefore Plaintiffs acknowledged they had some risk in overcoming this (incorrectly decided) precedent.  The Class's risk has only increased since the settlement was reached considering that a federal court accepted the state court's reasoning. To be sure, despite their contention that these decisions are wrong, Plaintiffs are not aware of any decisions—other than *Ahmed* and *Marin*—that discuss this issue.

Moreover, if the settlement had not been reached it appeared that Defendants were prepared to drag the case out for as long as possible. Even if the Class went to trial and was successful, there is very real risk that it would not be able to collect a larger judgment especially considering that (as the Court is aware) Defendants have still not funded the Settlement despite their promises to do so. In addition, there remained the very real concern that a jury would not find Defendant Katzoff individually liable. Put simply, if the Class fought this case to a judgment, it is unclear how much they would actually be owed and, if anything, who they would collect it from. Thus, Class Counsel risked receiving little or no payment for their work. (*See generally* Nussbaum Decl. ¶¶ 43-49.)

### c) Quality of the representation

Class Counsel have extensive experience representing employees in wage-hour class actions, as outlined in the Nussbaum Declaration, ¶¶ 99-100. *See, e.g.*, *Ramirez*, 2012 U.S. Dist. LEXIS 25060, at *10 ("Class Counsel have significant experience prosecuting and settling wage and hour class actions, and are well-versed in both wage and hour and class action law"); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008 (RJS), at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum […] and their firm are the best in breed – of firms doing this kind of work") (Nussbaum Decl., Ex. D); *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906 (HBP), 2015 U.S. Dist. LEXIS 85873, *29 (S.D.N.Y. July 1, 2015) (finding that JK "has extensive experience representing employees in wage and hour class and collective actions, particularly in the food service industry, and this experience ultimately aided in reaching a settlement."); *Capsolas*, 2012 U.S. Dist. LEXIS 144651 at *21; *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010). Class Counsel used their experience to obtain an excellent result for the class. *See In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884 (AVC), 2007 U.S. Dist.

LEXIS 52538, at *15 (D. Conn. July 20, 2007) ("The quality of representation here is demonstrated, in part, by the result achieved for the class."). No Class Members objected to the attorneys' fees or any other part of the settlement, a "reaction . . . [which] is entitled to great weight by the Court." *Maley*, F. Supp. 2d at 374.

Class Counsel's experience was apparent here where we steered this litigation at every step of the way. Our firm essentially babysat Defendants' discovery responses, document production and overall compliance with Court Orders, especially those relating to the production of Class Members' information. Most significantly, we successfully approached Defendants to discuss a settlement and achieved that result at the height of the pandemic in the spring and summer of last year. Finally, together with the Claims Administrator, we stewarded the notice and claims process despite working almost exclusively remotely and with a limited support staff to deal with Class Member inquiries.

Finally, "[t]he quality of opposing counsel is also important in evaluating the quality of Class Counsel's work." *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted). Throughout the final stages of litigation and the settlement process, all Defendants were represented by experienced litigators with Elenoff, Grossman and Schole LLP. (Nussbaum Decl. ¶ 116.)

### d)  The fee is reasonable in relation to the settlement

In the Second Circuit, it is well settled that a fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit." *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *15 (wage and hour settlement).

### e) Public policy considerations

The statutes under which the claims in this case were brought, the Fair Labor Standards Act and New York Labor Law, are remedial statutes designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a); N.Y. Lab. Law § 650. A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. *Maley*, 186 F. Supp. 2d at 374; *cf. Hicks*, 2005 U.S. Dist. LEXIS 24890, at *26. Moreover, given the relatively small recoveries of individual Class Members, it is unlikely that "without the benefit of class representation[] they would be willing to incur the financial costs and hardships of separate litigations." *Frank*, 228 F.R.D. at 181.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to (1) award the requested service awards; (2) award the Claims Administrator its reasonable fees towards administering the settlement; and (3) award Class Counsel attorneys' fees and costs.

Dated: New York, New York
January 21, 2021

**JOSEPH & KIRSCHENBAUM LLP**

/s/ *Josef Nussbaum*
D. Maimon Kirschenbaum
Josef Nussbaum
32 Broadway, Suite 601
New York, NY 10004
212-688-5640

*Attorneys for Named Plaintiff, FLSA Collective Plaintiffs, and the Class*